IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

OKSANA MARINARO,
Individually;
and A.M., a minor, by his
parent and next
friend OKSANA MARINARO.

v.

VIRGINIA BEACH CITY PUBLIC SCHOOLS;
SCHOOL BOARD OF VIRGINIA BEACH
CITY PUBLIC SCHOOLS;
Aaron Spence,
Crystal Lewis-Wilkerson,
Dannielle Hall-McIvor,
Bretta Z. Lewis,
all in their official and individual
capacity.

J:23cv 462

## COMPLAINT

## A. INTRODUCTION

Marinaro asks the Court to take judicial notice of the fact that she is

without counsel, is not schooled in the law and legal procedures, and is not

licensed to practice law. Therefore, her pleadings should be read and

construed liberally. See Haines v. Kerner, 404 US at 520 (1980); Birl v.

Estelle, 660 F.2d 592 (1981). Further Marinaro believes that this court has

a responsibility and legal duty to protect any and all of Marinaro's

constitutional and statutory rights. See United States v. Lee, 106 US

196,220 (1882).

## B. JURISDICTION

This Court has jurisdiction under 42 U.S.C. §1983. The Court has

jurisdiction over this civil rights action pursuant to 28 U.S.C. §1331 and

§1343. This Court has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202

to declare the rights of the parties and to grant all further relief found

necessary and proper. This Court has jurisdiction pursuant to 42 U.S.C.

2000d et seq., 42 U.S.C. §2000a-6, 28 U.S.C 2501, 42 U.S.C. §1985, 42

U.S.C. §1986, 28 USC §1367.

## C. PARTIES

1. Plaintiff Oksana Marinaro ("Marinaro") is a parent of a student A

M          in Virginia Beach City Public Schools. She is an immigrant from

Ukraine whose native language is Ukrainian and English is a learned

language. Current address: 3901 Roebling Lane, Virginia Beach, Virginia 23452, tel. (757) 822-4074; email: omarinaro@nps.k12.va.us.

2. Plaintiff A. M. ("A          " or "the child") is 12-year-old student in Virginia Beach City Public Schools and is Marinaro's child. Current address: 3901 Roebling Lane, Virginia Beach, Virginia 23452.

3. Defendant Virginia Beach City Public Schools ("District") is a political subdivision of the Commonwealth of Virginia. The District maintains its administrative office at 2512 George Mason Drive, Virginia Beach, Virginia 23456.

4. Defendant School Board of Virginia Beach City Public Schools ("School Board"). It maintains its administrative office at 2512 George Mason Drive, Virginia Beach, Virginia 23456.

5. Defendant Aaron Spence ("Spence") was at all relevant times hereinafter mentioned as Superintendent of Virginia Beach City Public Schools. Mr. Spence was responsible for, inter alia, ensuring the school district and his officials act in conformity with the United States Constitution and applicable federal and state laws. He is sued in both his official and individual capacity. He is currently a superintendent of Loudoun County Public Schools at 21000 Education Court, Ashburn, Virginia 20148.

6. Defendant Crystal Lewis-Wilkerson ("Wilkerson") was at all relevant times mentioned the Principal of Thalia Elementary School, which is located within Virginia Beach School District. Defendant Wilkerson has at all times hereinafter mentioned acted under color of state law. In her capacity as a Principal, Wilkerson was obligated to act in conformity with the United States Constitution and applicable federal and state laws. She is sued in both her official and individual capacity. For the school year of 2023-2024 she performs a duty as the Director of K-12 and Gifted Programs in Virginia Beach City Public Schools. Addres: 2512 George Mason Drive, Virginia Beach, Virginia 23456.

7. Danielle Hall-McIvor ("Hall-McIvor"), is, and at all relevant times mentioned was, the District Attorney. Defendant Hall-McIvor as a legal representative of the District and a member of the School Board has at all times hereinafter mentioned acted under color of state law. In her capacity as a McIvor is obligated to act in conformity with the United States Constitution and applicable federal and state laws. She is sued in both her official and individual capacity. Address: 2512 George Mason Drive, Virginia Beach, Virginia 23456.

8. Defendant Bretta Z. Lewis ("Lewis") is, and at all relevant times mentioned was, appointed as guardian ad litem in Virginia Beach Circuit Court to act on behalf of the child A        M        in the matrimonial proceedings taking place in the Virginia Beach Circuit Court ("Court"). Address: 908 Windsor Rd., Virginia Beach, Virginia 23451.

## D. FACTS

1. Marinaro is a naturalized citizen of the United States and a parent of the student A        M        in Virginia Beach City Public Schools. She is an immigrant from Ukraine, grew up and lived in Ukraine to the age of 33. Her native language is Ukrainian and English is a learned language.

2. On September 19, 2019, Marinaro appeared in the Thalia Elementary School gymnasium to pick up her child after school. Marinaro did not have any previous experience of picking up her child and was not familiar with the parent pick-up procedure.

3. When Marinaro entered the school gymnasium there was no school employee at the entrance door to direct Marinaro to the correct parent pick-up procedure.

4. Marinaro saw her child and attempted to leave with him without showing her ID to the school personal but acting the way it would be permitted in a Ukrainian school such as by the fact that the child recognized his parent, Ukraine is the culture Marinaro came from as an immigrant to the United States.

5. Marinaro was stopped by one of the teachers Tamara Cook and explained that she had to show her ID and sign out the child before she can leave with the child.

6. The child's father Domenick Marinaro was located in the school gymnasium at that time who appeared there in violation of the child custody and visitation court order and on Marinaro's parenting day and was signing out the child at the time Marinaro attempted to leave with the child.

7. The school principal Wilkerson was familiar with the child's father Domenick Marinaro who was an active volunteer in the school.

8. When Marinaro was explained by the teacher Tamara Cook that she had to sign out the child before she can leave with the child, Marinaro sent her child back to seat with the students who awaited their parents for pick-up.

9. While Marinaro was waiting for the child's father to sign out the child, Wilkerson approached Marinaro and explained that a parent had to sign out

the child before leaving with the child as well as indicated on the door through which parents leave with their children.

10. During the conversation with Marinaro, Wilkerson heard Marinaro's heavy accent, when Marinaro explained to Wilkerson that A          's father was signing out the child.

11. Wilkerson spoke with the child's father while Marinaro was waiting for the child's father to sign out the child and was aware who Marinaro was.

12. Due to the fact that the child's father already signed out the child there was no option for Marinaro to sign out the child again.

13. After the child's father signed out the child and only after that Marinaro left the school gymnasium with the child and her child's father through the door indicated by Wilkerson.

14. There was nothing in Marinaro's behavior that could be reasonably construed as threatening or violent nor did Marinaro disrupt the learning environment in the schoolhouse, Marinaro simply was not familiar with the parent pick-up procedure.

15. On that very day or so, Wilkerson contacted the child's guardian ad litem Lewis who was appointed to represent the interests of the child in Marinaro's divorce and child custody case in Virginia Beach Circuit Court ("the Court").

16. Wilkerson was motivated by ill-will, spite, and her palpable dislike of Marinaro who was originally from Ukraine and whom Wilkerson regarded with utter contempt and viewed her as a second-class citizen.

17. Wilkerson and Lewis willfully conspired to fabricate the evidence against Marinaro in Virginia Beach Circuit Court and falsely accuse her of misconduct and disruption of the learning environment in the schoolhouse on September 19, 2019, with the purpose of request to the court to take away Marinaro's child from her and assist the child's father in his unlawful plan to obtain the full custody of the child.

18. Instead of disclosing to the Court the child's father's violation of the court order for custody and visitation, his violent abusive conduct towards Marinaro that was documented in Marinaro's medical records, which Marinaro provided to Lewis, Lewis with the help of Wilkerson fabricated the evidence with the purpose to request to the Court to take the child away.

19. Lewis as the child's guardian ad litem was lawfully required to conduct a thorough investigation on the incident, meet with the teachers, Marinaro, the child's relatives and friend, and the child before she could file any pleadings with the Court.

20. Lewis did not meet with Marinaro to discuss the incident in the schoolhouse on September 19, 2019, nor did she meet with the teachers who witnessed the incident or with the child's grandmother who observed the child right after the incident in the schoolhouse, nor did she meet with A         who was happy to be with his mother on that day.

21. Such actions of Lewis show that she was in conspiracy with Wilkerson to falsely request to the court to take away Marinaro's child.

22. Lewis based her false accusations against Marinaro on Wilkerson's and her own false statements with whom she conspired to have Marinaro's child taken away from her.

23. Lewis who was friendly with the child's father and acted more like a second attorney for the child's father who had an unlawful plan to obtain sole custody of the child than an advocate for the child who must vigorously protect the interests of the child filed a motion with the Court in which she made false, misleading, and dishonest statements against Marinaro. A copy of the motion is attached as Exhibit 1.

24. Lewis as a second attorney for the child's father and not as independent guardian ad litem and advocate for the child was in close contact with the child's father with whom she fully discussed her motion and made him aware

of all lies she was going to present to the Court as the child's father filed a motion with the Court before even Lewis did, in which he also requested to award him full child custody due to Marinaro's actions, referring to September 19, 2019 incident in the schoolhouse while he himself later testified under oath that Marinaro did not disrupt the learning environment and that her conduct was not disruptive. A copy of the child's father's motion is attached as Exhibit 2.

25. Lewis provided Marinaro her motion only two days before the hearing and filed it with the Court only a day before the hearing, which makes it clear that Lewis fully disclosed the content of her motion to the child's father before she even wrote the motion.

26. The purpose of Lewis was to have immediately taken away Marinaro's child who had been under her care since he was born and deprive Marinaro of any contact with her child.

27. Lewis and Wilkerson fabricated the evidence against Marinaro and falsely accused Marinaro of misconduct and requested to the Court through Lewis' motion to take the child away. Tragically, Lewis and Wilkerson were successful in their efforts to convince the Court to take Marinaro's child away

from her and award custody to the child's father. A copy of the Court order is attached as Exhibit 3.

28. In her motion, Lewis lied about Marinaro, and made false, misleading statement to the Court. Specifically, Lewis stated in her motion that since September 1, 2019, Marinaro's behavior became increasingly irrational and problematic, causing harm to A    , that on September 19, 2019, Marinaro ran in the school gymnasium, grabbed her child and carried him to an exit, that Marinaro's child looked terrified when Marinaro attempted to carry him out of the school building.

29. Lewis falsely presented Marinaro as an inadequate person, and almost asserted that Marinaro is an abusive, unfit parent who abuses her child and does not take proper care of him while Marinaro was tested daily on her adequacy as a teacher in Norfolk Public Schools and every year was trusted children by the State of Virginia to bring up and educate.

30. Marinaro was deprived of her child for six months and prohibited any unsupervised contact with her child based on Lewis' false, misleading statements to the Court. Marinaro even did not have a chance to say goodbye to her child since the Court order took the affect immediately on the day of the hearing in the courtroom, October 4, 2019.

31. As a direct consequence of the misleading fabrications submitted by Lewis with the Court, Marinaro suffered greatly of having to defend herself against the baseless charges filed by Lewis against Marinaro.

32. Marinaro was forced to take a deposition on the teachers of the school regarding the incident on September 19, 2019 in the school gymnasium and appear for two court hearings, and later defend herself on the same matter at April 11, 2022 trial.

33. One of the teachers Tamara Cook testified under oath that she witnessed the incident and described Marinaro's actions as no threatening or violent, that it was obvious that Marinaro was not familiar with the parent pickup procedure, and that she witnessed Wilkerson speaking to the child's father while Marinaro was waiting for the child's father to sign out the child, and that Marinaro stopped when she was asked to do so by the teacher. A copy of the sworn testimonies of Tamara Cook is attached as Exhibit 4.

34. Another teacher Loletha Leaks testified under oath that she was present in the school gymnasium but did not witness any disruptive behavior by Marinaro or any disruption of the learning environment.

35. Marinaro was also forced to take a deposition on the child's father in January of 2020, regarding the incident on September 19, 2019 in the school

gymnasium. Even the child's father testified under oath that he witnessed Marinaro hugging and kissing Aᵢ         and that they left together through the door indicated by Wilkerson. A copy of the child's father's sworn testimonies is attached as Exhibit 5.

36. Even after these witnesses' testimonies, Lewis continued to lie and fabricate against Marinaro, and in February of 2020 filed her guardian ad litem report with Virginia Beach Circuit Court that should rather be construed as Lewis personal distaste, enmity, and xenophobia against Marinaro. A copy of the report is attached as Exhibit 6.

37. Instead of analyzing and protecting the interests of the child, Lewis in her report strongly expressed her personal ill-will, spite, and palpable dislike of Marinaro. Lewis called Marinaro's pleadings filed with the court as personal attacks on Lewis. For example, Lewis stated that "Marinaro has also filed multiple documents attacking the personal veracity and integrity of the undersigned…Ms. Marinaro's written attacks titled as "objections".

38. Lewis accused Marinaro again of inadequate behavior in the school gymnasium on September 19, 2019, falsely presented Marinaro as inadequate person because Marinaro appeared in the Virginia Beach Juvenile Court to obtain a protective order against the child's father.

39. Lewis did not explain in her report the reasons why Marinaro's behavior was inadequate in the Juvenile Court, but plainly falsely stated that Marinaro's appearance in the court constitutes inadequate behavior.

40. Furthermore, without stating any reasonable bases for her recommendation but rather her expression of personal ill-will and spite against Marinaro, Lewis recommended to the Court to award the child's father full custody of the child and to permit the child's father to relocate with the child to another state and, thus, to forever separate Marinaro and her child.

41. Lewis was not independent and did not vigorously protect the interests of the child and advocated for the child, but in fact she had a personal ill-will and spite against Marinaro, while Lewis was lawfully required to be independent and vigorously represent the interests of the child.

42. On March 12, 2020, Lewis was forced to waive the white flag in Virginia Beach Circuit Court, when the teachers from the school, the child's grandmother, and Marinaro's neighbor appeared to testify regarding the incident on September 19, 2019 in the school gymnasium and whose deposition testimonies were filed with the court.

43. On March 12, 2020, Lewis blatantly lied to the court that she always recommended shared custody of the child to the parents to avoid responsibility for all harm she caused to Marinaro and her child.

44. In October, 2019, Marinaro who truly believed that Lewis was lying and that Wilkerson did not contact Lewis on her own initiative, sent a letter to Wilkerson that explained that Marinaro was deprived of her child due to the incident on September 19, 2019 in the school gymnasium, that the child cannot receive a proper care from his father as well as accused Lewis to be dishonest person.

45. Marinaro used no school computer or resources to write the letter to Wilkerson.

46. In December, 2019, Marinaro took the deposition on the school teachers Tamara Cook, Irene Cashwell, Brenda Brocki, Loletha Licks, and Wilkerson regarding the incident in the school gymnasium on September 19, 2019.

47. The deposition was taken outside the schoolhouse and after the school hours.

48. Teachers Irene Cashwell and Brenda Brocki testified under oath that they were not present in the school gymnasium during the incident on September 19, 2019.

49. One of the teachers Tamara Cook testified that she witnessed the incident and described Marinaro's actions as no threatening or violent, that it was obvious that Marinaro was not familiar with the parent pickup procedure, and that she witnessed Wilkerson speaking to the child's father while Marinaro was waiting for the father to sign out the child, and that Marinaro stopped when she was asked to do so by the teacher.

50. Another teacher Loletha Licks testified that she was present in the school gymnasium but did not witness any disruptive behavior by Marinaro or any disruption of the learning environment.

51. On June 7, 2020, Marinaro posted a comment about Wilkerson to the Thalia Elementary Twitter that Wilkerson is equivalent to KGB and should be prohibited from working with children.

52. Marinaro used no school computer or resources to write the comment about Wilkerson or to post it on social media.

53. On June 11, 2020, during the waive-goodbye event on Thalia Elementary bus loop, Marinaro got out of her car and passed out a few flyers to the teachers and to Wilkerson that addressed Wilkerson's behavior that caused Marinaro the deprivation of her child. A copy of the flyer is attached as Exhibit 7.

54. In response, Wilkerson issued a letter to Marinaro that banned Marinaro from appearing on the school property, to attend school activities and school-sponsored events in which Marinaro's child can be involved. A copy of the letter is attached as Exhibit 8.

The offences charged in the ban letter were as follows:

Disruption of the learning environment in the school gymnasium during the parent pick-up on September 19, 2019, disruption of learning environment by sending a letter to Wilkerson that challenged the character of the child's father and guardian ad litem, disruption of learning environment by the fact that Marinaro filed a complaint against guardian ad litem with the Virginia Beach Police Department and the detective appeared in the schoolhouse to interview a few teachers and Wilkerson on the incident occurred on September 19, 2019 in the school gymnasium; disrupting learning environment by taking the deposition on the teachers and Wilkerson regarding the incident in the school gymnasium on September 19, 2019; disrupting the learning environment by positing the comments about Wilkerson's character on Virginia Beach City Public Schools Facebook (that apparently was made up by Wilkerson but was not posted by Marinaro); disrupting learning environment by posting comments about Wilkerson that had the same content as the flyer passed out by Marinaro to the school employees during the waive-goodbye event on the Facebook account of WTKR News 3; disrupting the learning environment by passing out flyers to the school employees during the waive-goodbye event.

55. At the April 11, 2022 trial in Marinaro's divorce and child custody dispute with the child's father, Wilkerson testified under oath in open court that Marinaro just like other students and parents got out of her car and gave the

flyer to the teachers. A copy of her sworn testimonies is attached as Exhibit 9.

56. Wilkerson did not and could not explain how Marinaro disrupted the learning environment on September 19, 2019 and June 11 of 2020 as explained above, however, she falsely accused Marinaro in disruptive behavior and falsely stated to the Court that Marinaro disrupted the learning environment and presented Marinaro as inadequate person.

57. Wilkerson also testified that she issued a ban letter against Marinaro for Marinaro's filing complaints against Wilkerson with the School Board that amounts to retaliation for constitutionally protected activities.

58. Wilkerson conspired with A        's father to help him in his unlawful plan to obtain full custody of the child and brazenly lied to the Court about Marinaro's disruptive behavior.

59. The District Defendants knew that Wilkerson would lie to the Court about Marinaro on April 11, 2022 but did not and did not attempt to prevent it.

60. Hall-McIvor was personally present at the April 11, 2022 trial, knew ahead of time of the Wilkerson's lies and heard Wilkerson's lies during Wilkerson's testimonies.

61. In August, 2020, Marinaro filed a complaint against Wilkerson with the School Board of Virginia Beach City Public Schools challenging Wilkerson's ban letter and claiming the discrimination on the national origin, violation of the First Amendment to the United States Constitution, challenging Wilkerson's professional conduct.

62. The District took no action on Marinaro's complaint and after receiving no response from the District, Marinaro filed a similar complaint two more times.

63. On December 1, 2020, the District attorney, Hall-McIvor, issued a letter on behalf of the School Board and superintendent Spence that stated that Marinaro's complaint was unsubstantiated. The letter also addressed that Marinaro was represented by counsel and must direct all her communication only to the School Board Legal Counsel. A copy of the letter is attached as Exhibit 10.

64. Marinaro did not intend to hire and never retain any attorney to represent her for the complaint against Wilkerson.

65. The District did not investigate Marinaro's complaint as if it did, it would find that Wilkerson had an ill-will and spite against Marinaro who is originally from Ukraine and whom Wilkerson viewed as a second-class citizen, the

District would find that Marinaro did not disrupt the learning environment either on September 19, 2019 or June 11, 2020.

66. On November 8, 2021, Marinaro notified Thalia Elementary that her child would ride the school bus that will take him to Marinaro's house. Marinaro lives in the neighborhood within the school district limits and the school bus limits.

67. After the school confirmed the receipt of Marinaro's request, the school placed the child on the bus that goes to the child's father's house while the child's father was not home on that day and was out of state.

68. When the school bus arrived to Marinaro's house, the child was not on the bus, Marinaro spoke to the bus driver Amy West who addressed that the child was not on the bus and she did not know where the child was.

69. Marinaro filed a complaint against Wilkerson with the School Board and Superintendent regarding the incident on the school bus and Wilkerson's negligence.

70. During the trial in Marinaro's divorce case on April 11, 2022, the bus driver Amy West testified under oath regarding the school bus incident on November 8, 2021 that the child was not on the bus and that she did not know whether the child was when Marinaro came up to her at the bus stop

looking for her child. A copy of the bus driver's sworn testimonies is attached as Exhibit 11.

71. In response to Marinaro's complaint the Thalia Elementary replied that they are going to continue to place Marinaro's child on the incorrect bus. A copy of the letter is attached as Exhibit 12.

72. In response to Marinaro's complaint, the District and the District Attorney Hall-McIvor, on behalf of the School Board and the superintendent Spence issued on November 15, 2021, a ban letter against Marinaro "Limitation of Access Communications to the School Board of the City of Virginia Beach". A copy of the letter is attached as Exhibit 13.

The offences charged were as follow:

Disruption of the learning environment in the school gymnasium during the parent pick-up on September 19, 2019, disruption of learning environment by sending a letter to Wilkerson that challenged the character of the child's father and guardian ad litem, disruption of learning environment by the fact that Marinaro filed a complaint against guardian ad litem with the Virginia Beach Police Department and the detective appeared in the schoolhouse to interview a few teachers and Wilkerson on the incident occurred on September 19, 2019 in the school gymnasium; disrupting learning environment by taking the deposition on the teachers and Wilkerson regarding the incident in the school gymnasium on September 19, 2019; disrupting the learning environment by posting the comments about Wilkerson's character on Virginia Beach City Public Schools Facebook (that apparently was made up by Wilkerson but was not posted by Marinaro); disrupting learning environment by posting comments about Wilkerson that had the same content as the flyer passed out by Marinaro to the school

employees during the waive-goodbye event on the Facebook account of WTKR News 3; disrupting the learning environment by passing out flyers to the school employees during the waive-goodbye event; disrupting the learning environment by the fact that the bus driver addressed to Marinaro on which bus was the child located but Marinaro still called the police even though she knew her child location; disrupting the learning environment by the fact that Marinaro continues to malign Wilkerson's reputation; disrupting the learning environment by the fact that Marinaro maligns the reputation of Virginia Beach Circuit Court judges; disrupting the learning environment by the fact that Marinaro maligns the reputation of respectful members of the community.

73. The District made multiple false statements in its ban letter. It brazenly lied that the bus driver explained to Marinaro which bus her child was riding, but in spite of that fact Marinaro called the police while being aware of her child's location.

74. The District falsely stated that the child was questioned by the school authorities regarding the bus incident and admitted that he voluntarily selected to ride the wrong bus.

75. Neither the District nor the school administration questioned the child nor did the child voluntarily selected to ride the wrong bus, he was not issued a pass to the correct bus without which he was not permitted to ride the correct bus and was forced to ride the wrong bus while being aware that his father was not home. Wilkerson willfully with malicious intent arranged the

placement of the child on the wrong bus. By doing so Wilkerson placed the child in danger and with the purpose of retaliating against Marinaro.

76. In its ban letter the District prohibited Marinaro from contacting any member of Virginia Beach School Board, Central Office Administration, or the Superintendent's office, and participate in any school activities that her child was involved in.

77. Such punishment and actions of the District are not only unlawful, but they are also willful, wanton, and malicious, causing extreme and irreparable injury.

78. The District conspired with guardian ad litem Lewis to whom the District referred in its ban letter as "other respected members of this community". On November 21, 2021, only six days after the District issued its ban letter against Marinaro, Lewis filed with the court a motion with false malicious statements the content of which was the analogue of the District accusations. Particularly, Lewis stated in her motion that "Defendant's pleadings have clearly been designed to harass and menace the parties, the Bench, and Counsel". A copy of the motion is attached as Exhibit 14.

79. Such analogue statements by Lewis show that she was familiar with the District letter about which she could not know when she filed her motion except from the direct contact with the District.

80. During the December of 2019 deposition of the schoolteachers and Wilkerson, the District Attorney Hall-McIvor admitted that she herself is a former guardian ad litem, and that she is well familiar with Lewis.

81. On June 15, 2022, Marinaro contacted the School District to notify that she intended to attend her child's fifth grade graduation.

82. On June 16, 2022, the District responded under the title "Enforcement of Limitation of access terms in effect Fifth grade graduation". A copy of the letter is attached as Exhibit 15. The letter prohibited Marinaro to attend her child's graduation and presented the following charges against Marinaro:


Marinaro disrupted the learning environment in the schoolhouse addressed in the ban letter; disrupting the learning environment by filing complaints with Virginia Beach School Board and the District; disrupting the learning environment by filing pleadings with Virginia Beach Circuit Court in Marinaro's divorce case; disrupting the learning environment by filing an objection with Virginia Beach Circuit Court against Wilkerson in Marinaro's divorce case and claiming that Wilkerson is not a credible witness; disrupting the learning environment by contacting the School Board in spite of prohibition to do so; disrupting the learning environment for questioning Wilkerson as a witness in open court.

83. Such punishment and actions of Wilkerson and the District are not only unlawful, but they are also willful, wanton, and malicious, causing extreme and irreparable injury.

84. None of the complaints filed by Marinaro with the District, pleadings filed with the Virginia Beach Circuit Court, questions asked to Wilkerson by Marinaro in open court could be reasonably construed as threatening or violent.

85. Neither Wilkerson nor the School District issued any ban letters to the parents who did not follow the parent pick-up procedure, no parents were issued any ban letter who themselves or permitted their children in their presence to get out of the car and give things to the teachers on June 11, 2020, no parent was issued a ban letter whose child was placed on the wrong bus by the District, no parent was issued a ban letter for having litigations in a court related or unrelated to the District, no parent was issued a ban letter for filing pleading with a court related or unrelated to the District, no parent was issued a ban letter for filing a complaint against a school principal.

86. On February 7, 2023, Marinaro appeared at Independence Middle School, which is located under the District jurisdiction and where Marinaro's child A       is currently a student, to pick up her child. The school refused

to release A        / to Marinaro stating that A        's records received by them from Wilkerson and initiated by Wilkerson indicate that Marinaro is prohibited to pick up A        from school.

87. Furthermore, the Independence Middle School showed Marinaro A        's school file that contained Marinaro's complaint against Wilkerson and Wilkerson's and the District's ban letters.

88. Such documents do not belong to the student's file and in no way are related to A        's performance at school and were maliciously placed in A        file by Wilkerson.

89. Based on Wilkerson's and the District's ban letters including the prohibition by Wilkerson in the District's online system that prohibited Marinaro to pick-up her child from school, the Independence Middle School refused to release A        to Marinaro.

90. Wilkerson's placement of such documents in A        's student's file damaged Marinaro's reputation.

91. Wilkerson's placement of such documents in A        's school file was also done in a way to affect A        's admission in top universities and to present him as a conflict, inadequate person through the behavior of his mother falsely described by the District in its documents. Such actions were

also done with the malicious intent to make A          be embarrassed of his mother and his Ukrainian origin.

92. The provisions in the District's disciplinary code under which Marinaro was punished are unconstitutionally overboard and vague, on their face and as applied to Marinaro, in that they, inter alia, fail to distinguish out-of-school speech from in-school expression and they are not limited to parents' conduct on the school property that causes a material and substantial disruption to the school day.

93. The District's vague and overboard policies prohibit and chill speech protected by the First Amendment.

94. The District Defendant's punishment of Marinaro amounts to retaliation for constitutionally protected activities.

95. Defendant's actions have produced irreparable harm for which there is no adequate remedy at law.

96. Defendant's punishment of Marinaro interferes with and usurps Marinaro's constitutional right as a parent to direct the upbringing of her child.

97. To this day Marinaro still has to defend herself in Virginia Beach Circuit Court against Defendants baseless accusation of misconduct and disruption of learning environment. Up to this day, the Virginia Beach Circuit Court

continues to accuse Marinaro in misconduct and disruption of learning environment.

## CLAIMS

### Count 1: First Amendment of the United States Constitution – Marinaro's Punishment and Retaliation.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set forth at length herein. The District's Defendants punishment of Marinaro for her outside and inside school activities, distributing a flyer that challenges the Wilkerson's character, posting the comments in social media about Wilkerson, filing the complaints against Wilkerson with the District, asking questions to Wilkerson during the trial, filing the objections with the Court against Wilkerson violates Marinaro's rights under the First Amendment as well as amounts to retaliation under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. §§1983 and 1988.

### Count 2: Fourteenth Amendment Due Process – Marinaro's parental rights.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set

forth at length herein. The District's Defendants punishment of Marinaro interfered with Marinaro's rights as a parent to care, raise, upbring, educate her child in violation of her rights under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §§1983 and 1988.

## Count 3: Fourteenth Amendment Due Process and First Amendment – District disciplinary policies.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set forth at length herein. The District policies and rules are unconstitutionally vague and/or overboard both on their face and as applied to Marinaro. The District policies and rules violate the First Amendment and the Fourteenth Amendment Due Process to the United States Constitution, and 42 U.S.C. §§1983 and 1988.

## Count 4: Fabrication of Evidence/Denial of the Right to a Fair Trial Under 42 U.S.C. §§1983 and 1988.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set forth at length herein.

Defendants misrepresented and falsified evidence about Marinaro, fabricated false, misleading and dishonest statements about Marinaro and her child.

Defendants forwarded this false evidence to the Court. As a result of the unlawful actions by Defendants, Marinaro's child was removed from Marinaro's custody without any Due Process that caused Marinaro multiple court appearances and depositions in order to defend herself. As a result of Defendants' unlawful actions, Marinaro was deprived of the lawful custody and visitation of her child.

Defendants misrepresented and falsified evidence about Marinaro, fabricated false, misleading and dishonest statements about Marinaro and represented it to the Court on April 11, 2022.

In creating false evidence against Marinaro and in forwarding false evidence and representing such false evidence to the Court, and in giving false and misleading testimony throughout the Civil Proceedings, Defendants violated Marinaro's constitutional right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

As a result of the foregoing, Defendants violated Marinaro's federal rights, privileges and/or immunities as secured by the Constitution and laws of the United States of America, and caused Marinaro to suffer severe emotional distress, anguish and anxiety.

## COUNT 5: MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "9l7" as if the same were more fully set forth at length herein.

The aforementioned individual Defendants undertook these actions in order to obtain a collateral objective outside the legitimate ends of the legal process. Specifically, Defendants acted in this manner in order to effectuate the child's father's unlawful plan to obtain sole custody of the child.

The aforementioned individual defendants acted with intent to do harm to Marinaro, without excuse or justification.

As a result of the foregoing, Marinaro sustained, inter alia, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her constitutional rights, and caused Marinaro to suffer severe emotional distress, anguish and anxiety.

To this day, Marinaro is questioned as to why she lost custody of the child, and it is presumed by the public at large that Marinaro must have been a "bad mother," or done something else wrong, to have had her child taken away by the court system in the first place.

As a result of Defendants' materially false, misleading and dishonest statements to third parties, Marinaro was deprived of her fundamental constitutional rights, lost custody of her child, was barred from seeing her child, had her parental rights altered, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, was forced to incur substantial expenses, and had her reputation destroyed.

To this day, Marinaro still has to appear in Virginia Beach Circuit Court to defend herself against the District false accusation.

## COUNT 6: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS UNDER 42 U.S.C §§ 1983, 1985, 1986.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set forth at length herein.

Defendants conspired as well as conspired with the child's father and acted in concert to do whatever was necessary, lawful or not, to deprive

Marinaro of her lawful custodial rights over her child as well as punished Marinaro for attempting to enforce her rights, deprived Marinaro of her rights.

Throughout the period of the conspiracy, Defendants pursued their objectives with actual malice toward Marinaro, with utter and deliberate indifference to and disregard for Marinaro's rights under the Constitution and laws of the United States, without probable or reasonable cause to believe Marinaro was guilty of any wrong.

Pursuant to the conspiracy, the conspirators, and their employees, agents and servants, intentionally, recklessly, negligently, and/or with complete indifference to the rights of plaintiff: manufactured false evidence; failed to correct such false statements and testimony; prohibited Marinaro attend any school activities her child was involved in, prohibited Marinaro to attend Marinaro's child's fifth grade graduation.

The District Defendants knew that Wilkerson would provide false misleading statements about Marinaro in the Court, but they failed to prevent it.

As a result of the foregoing, Marinaro was deprived of custody of her child, was deprived of her right to freely see and visit her child, was denied

her liberty, was denied fundamental constitutional rights, was denied her right to attend any school activity her child was involved in, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, and anxiety.

## COUNT 7: DISCRIMINATION AND RETALIATION ON NATIONAL ORIGIN UNDER 42 U.S.C §1983, 42 U.S.C. 2000d et seq.

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set forth at length herein.

The District Defendants treated Marinaro adversely for her protected activities.

Neither Wilkerson nor the School District issued any ban letters to the parents who did not follow the parent pick-up procedure, no parents were issued any ban letter who themselves or permitted their children in their presence to get out of the car and give things to the teachers on June 11, 2020, no parent was issued a ban letter whose child was placed on the wrong bus by the District, no parent was issued a ban letter for having litigations in a court related or unrelated to the District, no parent was issued a ban letter for filing pleading with a court related or unrelated to the

District, no parent was issued a ban letter for filing a complaint against a school principal.

## COUNT 8: LEGAL MALPRACTICE UNDER VIRGINIA STATE

Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "97" as if the same were more fully set forth at length herein.

Defendant Lewis was appointed by the Court to act as guardian ad litem for Marinaro's child A

Lewis owed A           a duty to act in his best interests and vigorously protect his interests.

Lewis negligently breached her duty owed to A           . Rather than taking actions to protect the interests of A         Lewis fabricated false, misleading, and dishonest reports and pleadings about Marinaro and her child.

Rather than prioritizing the interests of A          as she lawfully was required to do, Lewis repeatedly acted as a "second attorney" for the child's father, arguing on his behalf through the civil proceedings, and protecting his interests over those of the child.

In so doing, Lewis flagrantly violated her legal duties as guardian ad litem and departed from good and accepted practices as an attorney licensed to practice in the State of Virginia.

As a direct and proximate result of Lewis' legal malpractice and negligence, Marinaro's child was deprived of his mother's care and love for six months.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court provide the following relief:

1. Declare that the District's Defendants' punishing actions against Marinaro violated Marinaro's rights under First and Fourteenth Amendments to the Constitution.

2. Declare that the District's policies that have been and may be used to punish people are excessively vague and overboard, and thereby violate the Firsts and the Fourteenth Amendments to the United States Constitution, and violate Marinaro's First and Fourteenth Amendments to the United States Constitution.

3. Enjoin the District's Defendants from any continuing punishment against Marinaro on account of her constitutionally protected activities and expunging from A＿＿'s school records all references to the incidents in question.

4. Enjoin District Defendants from enforcing all District policies and rules against parents in reference to the incidents in question unless it rises to a crime under the Virginia Crime Code.

5. Award all reasonable damages against the Defendants.

6. Award compensatory and/or punitive damages against the Defendants in the amount of $1,500,000.

7. Award Plaintiffs' cost and attorney's fees (if any) pursuant to 42 U.S.C. §1988.

8. Grant such other relief as this Court deems just and appropriate.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I, Oksana Marinaro, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of rule 11.

I, Oksana Marinaro, declare that I received no attorney's assistance with the filings.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep the current address on file with the Clerk's Office may result in the dismissal of my case.

Date _09/18/2023_

Signature _O. Marinaro_

Oksana Marinaro
3901 Roebling Lane
Virginia Beach
Virginia 23452
Tel. (757) 822-4074
omarinaro@nps.k12.va.us

# EXHIBIT# 1

VIRGINIA:    IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

DOMENICK A. MARINARO,

                        Plaintiff,

v.

                                    CL 18 - 5322
                                    In Re: A        M        (DOB

OKSANA MARINARO,

                        Defendant.

---

### Motion to Amend *Pendente Lite*
### Custody and Visitation

---

**NOW COMES** the Child, A        M        , by his Guardian *Ad Litem* and as and for his Motion to Amend *Pendente Lite* Custody and Visitation hereby states as follows:

1.  This Honorable Court heard evidence and argument regarding custody and visitation on July 18, 2019. The resulting Order held that the parents would share legal custody and that during the summer, the parents would share physical custody on an equal basis. The Order also held *inter alia* that during the school year, the father would have primary physical custody and the mother would have parenting time on alternate Thursdays – Monday, with an overnight visit during the week that she does not have weekend visitation;

2.  On August 30, 2019, the matter was heard upon the mother's motion to have Ms. Markewicz removed, as well as her motion to omit certain provisions of the *Pendente Lite* Order regarding her mother being excluded as a childcare provider.

The father also filed a Motion to Amend visitation which was heard on August 30, 2019. He asked that the mother's visitation should be suspended or terminated based on his report of her disruptive behavior as well as her disparaging of him to the child. He also expressed concern that the mother had continued to leave A        in the care of the maternal grandmother, whom he reports is not an appropriate care provider.

The undersigned opposed the father's motion on August 30, due to a belief that the mother's behavior would be ameliorated by the start of the school year, her beginning full time employment as a teacher, and the physical separation of the parties, who had only recently ceased to share the marital residence. By all accounts, tensions in the home had been quite high just preceding the separation. The trial was set for March 17, 2020.

VA. BEACH CIRCUIT COURT

19 OCT -3  AM 9: 18

TINA E. SINNEN, CLERK

162

3.  Since September 1, 2019, the mother's behavior has, according to sources close to the child, other than the father, become increasingly irrational and problematic, thereby causing harm to A⎯⎯⎯⎯, his stability, and his security at home and in the community.

4.  On September 19, 2019, the principal of Thalia Elementary, where A⎯⎯⎯⎯ attends school, contacted the undersigned to express concern regarding the mother's behavior. On that date, she apparently arrived at the school in contravention of school procedures after being told that her request to change the child's transportation had been made too late in the day to be accommodated.

At the time the students were being released, Ms. Marinaro reportedly ran into the room where the children were being dismissed and attempted to grab A⎯⎯⎯⎯ and leave. After being reprimanded by school personnel and told to follow procedure, she reportedly pretended to be with Mr. Marinaro who had shown proper identification. She then proceeded to grab A⎯⎯⎯⎯, who was standing with his father, and carried him to an exit, where she was physically blocked by a physical education teacher.

The principal, Dr. Wilkerson, reported serious concerns that the behavior that Ms. Marinaro displayed was clearly traumatizing for A⎯⎯⎯⎯ whom she observed looking "terrified" when his mother attempted to carry him out of the building. Dr. Wilkerson reported that the other parents and children who witnessed the event also expressed concern. Dr. Wilkerson stressed the importance of the school being a safe and secure environment where the parents model appropriate and orderly behavior and prioritize the children's well-being.

Dr. Wilkerson reported that the school was hosting an event the evening of the incident ("skate night"), and that it was her understanding that Mr. Marinaro, who has reportedly been a very active volunteer with the school, was planning to attend the event with A⎯⎯⎯⎯. Dr. Wilkerson expressed concern that Ms. Marinaro's behavior that day was related to her desire to disrupt A⎯⎯⎯⎯'s attendance at the event. Dr. Wilkerson reported that Ms. Marinaro was previously unknown to school personnel.

5.  On or about September 9, 2019, A⎯⎯⎯⎯'s counselor reported to the undersigned that A⎯⎯⎯⎯ has experienced a great deal of stress regarding his parents' pending divorce, and that he has, at times, expressed that he feels responsible for the parents' separation due to his acute awareness that they frequently fight about issues related to his care, such as nutrition.

According to both parents, A⎯⎯⎯⎯ suffers from physical symptoms such as tics due to stress. A⎯⎯⎯⎯'s stress-induced tics were reported as one of the reasons that he began seeing the counselor. His mother has reported serious concerns about the tics. The mother's behavior at the child's school appears to be the type of behavior that would exacerbate the child's stress regarding his parents' divorce.

6.  Despite her awareness of A⎯⎯⎯⎯'s tics and need for emotional stability, Ms. Marinaro has taken steps since September that would tend to increase the stress in both homes, including her appearing in the Virginia Beach Juvenile Court on September 23, 2019, which was coincidentally observed by the undersigned.

7.  On September 23, 2019, in an apparent attempt to circumvent the *Pendente Lite* ruling of this Honorable Court, Ms. Marinaro appeared in the Virginia Beach Juvenile Court seeking

2

an *ex parte* order. The clerk reported that Ms. Marinaro filed petitions for custody and visitation, and a petition seeking an *ex parte* emergency Protective Order. The clerk provided copies of the filings to the undersigned. Retired Judge Deborah Paxson heard the matter and denied Ms. Marinaro's petitions, entering an order dismissing the pleadings, citing insufficient evidence.

At some point prior to September 23, 2019, Ms. Marinaro also apparently appeared before the magistrate to swear out warrants for Mr. Marinaro's arrest, alleging physical abuse from May 2019. These incidents, which cite Mr. Marinaro's reported grabbing of her "nostrils," are different than what she reported to the undersigned in July 2019, when she reported that he had kicked her at some point years prior. The version of events reported to the magistrate was also different from her testimony in Circuit Court on July 18, 2019, which is recorded in the transcript from that hearing.

8.  Mr. Marinaro reported that he has had to devote considerable time and expense to answering the new criminal charges, and that he has had to make childcare arrangements for A          while he underwent fingerprinting procedures and other requirements. With A        s emotional and physical issues, as well as his need for stability and security, it is detrimental to A        for his mother to be taking steps which appear to be designed specifically disrupt his father's ability to care for him. It is also detrimental to him that she is appearing at his school and creating chaos for him and his peers.

9. Further disrupting the typical procedures in this Court, Ms. Marinaro has repeatedly filed motions without notice to Counsel, and had has failed to clear dates with the undersigned.

10. On September 26, 2019, Ms. Marinaro sent correspondence along with a motion regarding the custody Order, as well as a purported evaluation that is alleged to have been prepared by her counselor. The correspondence accompanying the correspondence stated that the appearance of the GAL would not be necessary at the hearing. As of September 30, 2019, Ms. Marinaro has filed additional Motions relating to the custody matter without following proper procedures or clearing the date.

    WHEREFORE, the child, A        , M        , by his Guardian *Ad Litem*, hereby prays for the following relief *pendent lite*:

1.  For the father to be awarded sole legal custody of the child, with a specific caveat that the mother is not to appear at A        's school or any location where he is participating in any activities or events;

2.  For the all contact between the Ms. Marinaro and A        to be suspended or supervised by a professional supervisor until such time that she is able to express an understanding of the impact of her outbursts and behaviors on the child and amend her behavior accordingly;

3.  For the mother to be barred from filing any further pleadings or motions necessitating the appearance of Counsel without specific leave of Court;

4.  For whatever other and further relief the Court deems necessary and appropriate in the interests of justice herein.

A    M

By: _____

Guardian Ad Litem

### Certificate of Service

The undersigned hereby certifies that a true and accurate copy of the foregoing was sent via email to Counsel for the Plaintiff and to the Defendant, pro se on this 30th Day of September 2019.

4

# EXHIBIT# 2

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

DOMENICK A. MARINARO,

           **Plaintiff,**

v.                       **Case No. CL18-5322**

OKSANA MARINARO,

           **Defendant**

## NOTICE AND MOTION

PLEASE TAKE NOTICE that on the 4th day of October, 2019 at 9:30 a.m., the undersigned will move this Honorable Court, pursuant to the Code of Virginia and the laws of Virginia, for the following relief:

1.    For an Order granting Plaintiff sole legal and physical custody of the minor child of the parties and terminating Defendant's visitation (in the alternative supervised visitation) based on a change of circumstances including the Defendant's actions;

2.    For an Order of sanctions against Defendant for filing multiple motions regarding the same issue of removing paragraph 1(B) (iii) from this Court's Order entered August 12, 2019, a copy of which is attached; and

3.    For such other and further relief as may be appropriate, including attorney's fees and costs.

                     DOMENICK A. MARINARO

                     By: _____
                             Counsel

Keri A. Markiewicz, Esquire (VSB# 38480)
Keri A. Markiewicz, P.C.
1206 Laskin Road, Suite 208
Virginia Beach, VA 23451
(757) 437-7970 Telephone
(757) 437-7971 Facsimile
Counsel for Plaintiff

### CERTIFICATE OF SERVICE

I certify that on the 30th day of September 2019, a copy of the foregoing Notice and Motion were emailed, faxed and/or mailed to Oksana Mariharo, pro se, Defendant and Bretta Lewis, Esquire, Guardian *ad Litem*.

Keri A. Markiewicz

130

# EXHIBIT# 3

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

DOMENICK A. MARINARO,

**Plaintiff,**

v.                                          Case No. CL18-5322

OKSANA MARINARO,

**Defendant.**

## ORDER

THIS CAUSE came on to be heard this day, October 4, 2019, upon the motion of the Plaintiff, after notice duly served upon the Defendant, upon motions of the Defendant, upon the motion of the Guardian Ad Litem, with all parties and counsel present, and upon hearing evidence and arguments of the parties;

WHEREUPON, the Court having considered the statutory factors set forth in the Code of Virginia and all testimony and evidence submitted by the parties and the arguments of counsel; and for good cause shown, it is

ADJUDGED, ORDERED and DECREED as follows:

1.    **Custody and Visitation:**

A.    Plaintiff shall have sole legal and physical custody.

B.    Defendant's visitation is reduced to supervised visitation of every other Saturday for 2 hours only with an approved supervisor by GAL and CPS; she shall have no contact of any kind except these 2 visits per month;

C.    ~~Defendant is strictly prohibited from appearing at the minor child's school or any~~

1

~~locations where he is participating in any activities or events;~~

D.    All contact between Defendant and their minor child is _prohibited_ _except as was stated in paragraph 1(B)_ _____ until further order of this court; and

E.    Pursuant to Section 20-124.5 of the Code of Virginia, 1950 as amended, a thirty (30) day advance written notice shall be given to the Court and the other party by any party intending to relocate and of any intended change of address, unless the Court, for good cause shown, orders otherwise.

**2.    Counsel Fees and Costs:**

Plaintiff's counsel fees and costs are reserved; _sanctions are reserved against Defendant_

**3.    Additional Issues:**

~~Defendant is barred from filing any further pleadings or motions necessitating the appearance of Counsel without specific leave of Court;~~ — _this motion is reserved Court will entertain barring further pleadings if Defendant files additional frivolous Motions._

**4.    All other provisions in the Orders entered by this Court which are not materially changed herein shall remain in full force.

_5. All motions which Defendant filed are dismissed/denied._

ENTERED THIS _4th_ DAY OF _October_, _____

_____
Judge

ENDORSEMENTS ON FOLLOWING PAGE:

2

180

SEEN AND AGREED:

_____
Keri A. Markiewicz, Esquire (VSB#48380)
Keri A. Markiewicz, P.C.
1206 Laskin Road, Suite 208
Virginia Beach, Virginia  23451
(757) 437-7970 - Telephone
(757) 437-7971 - Facsimile
Counsel for Plaintiff


SEEN AND _objected_: to the Order. There was
absolutely no grounds
for this order. The Defendant
presented all proofs
_____  that the plaintiff is
Oksana Marinaro, Pro Se    uncapable to take care
Defendant                  or the child. The Guardian
                           Ad Litem lied to the
                           court and fabricated
SEEN AND _agreed_:         all information.

_Bretta_                   O. Marinaro
Bretta Lewis, Esquire (VSB# _45574_)
Zimmer & Lewis, Attorneys and Counsellors at Law
1397 Laskin Road
Virginia Beach, Virginia 23451
(757) 491-6220 (telephone)
(757) 491-6260 (facsimile)
Guardian *Ad Litem*

3

181

# EXHIBIT# 4

1    Q. What happened on September 19 when

2  A.        M.        's mother and father entered the

3  school gymnasium?

4        A. I just noticed mom walked a different

5  way, a different direction than what the norm,

6  the normal parents do. They walk straight. She

7  walked or you walked diagonal and you weren't

8  familiar with the pickup is what I noticed

9  straight off the bat. And then you took A

10  from the line and started walking toward me and I

11  stopped you.

12        Q. When you stopped me, did I stop or kept

13  walking?

14        A. You were walking pretty fast, so you

15  kind of, like, started walking around, like...

16            MS. HALL-MCIVOR: Answer if you

17  can.

18        A. Yes. When you, you stopped, but you,

19  you weren't, you were trying to walk fast. You

20  were walking fast, so you were about to pass me.

21        Q. But I did stop eventually?

22        A. Yes, yes.

23        Q. Okay.

24        A. And then I just explained to you that

25  you had to show ID...


VETERAN
REPORTERS



855.667.0077
VETERANREPORTERS.COM

1  Objection as to form, lack of foundation.

2  Objection. Compound. Answer if you know.

3        Q. Okay.

4        A. Okay.

5        Q. **When you stopped me, what happened**

6  **next? What did I do?**

7        A. I, I just relayed to you that you have

8  to check him out before you can take him. And

9  then I remember I looked over and I saw your

10  husband speaking to Dr. Wilkerson. But I didn't

11  know what was transpiring between or, you know,

12  what, what was going on. I just...

13        Q. Okay. Did...

14              MS. HALL-MCIVOR: Only answer the

15  questions yes.

16        A. Yes.

17        Q. **Did I physically pick up A**       **and**

18  **tried to carry him out of the building?**

19              MS. HALL-MCIVOR: Objection as to

20  form. Lack of foundation. Answer if you can.

21        A. Yeah. I just saw you with, with your,

22  his arm in your hand.

23        Q. **His arm or his hand?**

24        A. You, you were walk, he was trailing

25  behind you. But he didn't, he just was, he looked





VETERAN REPORTERS    855.667.0077    VETERANREPORTERS.COM

# EXHIBIT# 5

```
 1  after I ask him to do so?

 2       A. No.

 3       Q. Did you see me hugging and kissing

 4  A₁     when he came to me after I asked ...

 5       A. Yes.

 6       Q. ... that he do so?

 7       A. I just answered he did not go to you.

 8       Q. Did you see the child opposed in any

 9  way to my kissing or hugging him when I was

10  picking him up from school on September 19th?

11       A. No.

12       Q. Did you hear any objections from the

13  child while he was leaving the school with me on

14  September 19th?

15            MS. MARKIEWICZ:  Objection, calls

16  for hearsay.

17       Q. Please answer.

18       A. No.

19       Q. Did I finally follow the school teacher

20  after being directed to leave through the school

21  office with the child?

22            MS. LEWIS:  I'm sorry, can you

23  repeat the question?  I did not hear it.

24       Q. Did I finally follow the school teacher

25  after being directed to leave, to leave through
```




1  the school office with the child?

2              MS. MARKIEWICZ:  Objection,

3  compound question as far as whether she finally

4  left, if she was allowed to leave with the child.

5          Q. Did I finally leave the school through

6  the school office as was directed by the teacher?

7          A. I believe it was the principal.

8          Q. Okay, as it was directed by one of the

9  school employees.

10         A. Yes.

11         Q. Were you present at the school event

12 skate night on September 19th?

13         A. Yes.

14         Q. Did you see me and the child attending

15 the school event skate night?

16         A. Yes.

17         Q. Did the child say goodbye to you when

18 leaving the school event skate night?

19         A. No.

20         Q. Did you see or hear me restricting or

21 stopping the child from saying goodbye to you?

22         A. Yes.

23         Q. And please describe what happened

24 exactly.

25         A. At the skate night?

 

EXHIBIT# 6

VIRGINIA:  IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

DOMENICK A. MARINARO,

                    Plaintiff,

v.

OKSANA MARINARO,                CL 18 – 5322
                              *In Re:* A     ' M      DOB

              Defendant.

---

**Report of the Guardian *Ad Litem***
**Trial Date: March 12, 2020**
**Date of Report: February 21, 2020**

---

**Parties:**

Oksana Marinaro, Mother, Defendant, *Pro se*

Domenick A. Marinaro – Father, Plaintiff, *Represented by Keri A. Markiewicz, Esq.*

**Issue:**     Custody and Visitation – A     M.    (DOB

## I.  PROCEDURAL HISTORY/POSTURE

### a.  History Prior to October 2019

The parties are currently married to each other. They separated within the marital residence on or about June 29, 2018, according to the Complaint, Answer and Counterclaim. The parties reportedly resided separately in the residence for approximately 13 months. Both parties report strife during the in-home separation.

In late August/early September 2019, the mother, Ms. Marinaro reported that she was in the process of moving into a separate residence, which she reportedly currently shares with her mother. She reported that the grandmother owns the residence, however, it appears that Mr. Marinaro may claim some interest in the residence.

The parties both report that Ms. Marinaro has not resided within the marital home since approximately September 5, 2019. The parties disagree on all matters relating to their shared child, A    M    , age 8, including his nutrition, who has been the primary caregiver, who should have primary custody, and whether the other parent is a fit and proper custodial parent.

The undersigned was appointed to represent the minor child of the parties on May 17, 2019 over the mother's objection. A *Pendente Lite* hearing was held July 18, 2019, resulting in a shared legal and physical custodial arrangement during the summer, and with the father having a slightly greater share of the physical custodial time during the school year.

Prior to the commencement of the school year 2019-2020, the father filed a motion to amend the visitation to reduce the mother's parenting time, which motion was initially opposed by the undersigned, as it appeared possible that the physical separation of the parents and the mother's beginning full time employment with the Norfolk school system may yield a cessation in constant strife between the parties.

At the *Pendente Lite* hearing in July 2019, the undersigned recommended a shared custody schedule that was equally shared in the summer, and allowed for visitation with the mother on a slightly less than equal basis during the school year, based primarily on her work schedule.

Until and during the *Pendente Lite* hearing in July, 2019, Ms. Marinaro was represented by Counsel. At that time, the matter was proceeding in an unremarkable fashion. After the *Pendente Lite* hearing, Ms. Benn, who had most recently represented Ms. Marinaro, withdrew. At that time, the tenor of the litigation changed dramatically and the matter became a highly contentious, almost constant barrage of motions about every aspect of the matter including even minor alterations to proposed orders reflecting the Court's various rulings.

**b.** **Procedural History After September 2019**

**1.** **October 2019 Hearing and Juvenile Court Proceedings**

In September 2019, the undersigned received information from third parties such as school personnel which caused concern that the situation between the parents appeared to be impacting the child at home and at school.

Also, during September 2019, the mother appeared in the Virginia Beach Juvenile and Domestic Relations District Court and attempted to gain custody of the child pursuant to an emergency petition which was dismissed by the Honorable Deborah Paxson (retired) due to lack of evidence. On the next day, alleging the same facts and circumstances, Ms. Marinaro again appeared before The Honorable Tanya Bullock and was granted a protective order for herself.

Ms. Marinaro also swore out a warrant against Mr. Marinaro with the magistrate, on which he was reportedly arrested. It appears that Ms. Marinaro did not disclose to the judges or the magistrate before whom she appeared that the custody matter was already being litigated in Circuit Court or that A          was represented by a GAL. She has reported that she did not disclose same because she feels that A          s interests are not adequately represented.

After interviewing the third-party individuals who had proactively contacted the undersigned, and after having coincidentally observed Ms. Marinaro outside of the Juvenile and Domestic Relations District Courtroom just before her appearance before Judge Paxson, and after reviewing the pleadings she filed in Juvenile Court, the undersigned reluctantly filed a motion consistent with the information received during the course of the GAL investigation.

October 4, 2019, upon the motions filed by the Plaintiff and the undersigned, the mother was Ordered to limit her contact with A      to supervised visits twice per month, with a supervisor to be approved by the GAL, with CPS approval. Despite several written requests, Ms. Marinaro has failed to provide a suggested supervisor, and has not chosen any of the supervisors suggested to her. She has testified in Court and has stated in writing in email correspondence that she will not cooperate with supervision. She has responded to the undersigned's repeated requests by reiterating that she will not be supervised. Due to the mother's refusal in this regard, she has not seen A      since late September 2019.

## 2. Depositions and Police Involvement December 2019, Depositions January 2020, Hearings January 10, 2020 and February 2020, and Other Filings

In December 2019, the mother conducted depositions of school personnel. Her questions centered on the statements of school personnel to the undersigned which formed the basis of the September 2019 motion.

In December 2019, Ms. Marinaro contacted Virginia Beach Police and initiated a police investigation of the undersigned regarding allegations of "perjury and fraud" related to the GAL's motion relating to the concerns expressed by Thalia Elementary School personnel. The responding Detective reported that she declined to pursue charges after conducting interviews with Ms. Marinaro, personnel from Thalia Elementary, and the undersigned.

In January 2020, the mother conducted depositions of her mother, and of the Defendant. Her questioning centered on, among other things, her allegations that Mr. Marinaro has physically abused her. Her questions of Mr. Marinaro focused on her belief that he is in poor health.

Transcripts of the depositions are available for Court review upon request and have been reviewed by the undersigned, in addition to the personal attendance of the undersigned at the January 2020 depositions. The testimony of all deponents has been considered in formulating the recommendations herein.

On January 10, 2020, this Court heard multiple motions filed by each party. One of the major issues raised by Ms. Marinaro was her belief that it was necessary for the Court to enter an order compelling the issuance of a Subpoena for a psychological evaluation that she had commissioned by a psychologist in Northern Virginia. The Court ruled that the

issue was moot, as the evaluation report had been received, filed, and reviewed by all parties, Counsel, and the GAL and that the document was already available to the Court. Ms. Marinaro appeared undaunted by the Court's explanation and continues to object to the failure of the Court to enter an order compelling the issuance of the subpoena despite the availability of the report to all involved.

In January and February, Ms. Marinaro has also filed multiple pleadings alleging a lack of parental fitness against Mr. Marinaro. During the January 10, 2020 hearing before The Honorable Stephen Mahan, Ms. Marinaro expressed on multiple occasions and has reiterated in her numerous filings that she believes that the father does not care for the child, that he is incapable of caring for the child, and that he should not be the child's primary care provider. The custody arrangement she appears to support includes her having primary custody, with the father having some non-overnight time with the child each day.

Ms. Marinaro has alleged in multiple pleadings, as well as to the undersigned, and to the Court that Mr. Marinaro is not capable of caring for the child, that he abuses and neglects the child by feeding him only fast food and pasta, and that he is not physically healthy enough to care for him. These allegations have been lodged in writings to the Court, in emails to the undersigned and to Counsel for Mr. Marinaro, in testimony, in pleadings filed in the Juvenile Court, and in every venue to which Ms. Marinaro has access. In December and subsequently, Ms. Marinaro has reportedly sent packages of fruit to the Plaintiff's house for the purpose of supplementing the child's diet, which she claims is necessary due to the Plaintiff's willful neglect of the child's nutritional needs.

The Plaintiff reports that the packages contain more fruit than the child and/or he could possibly consume. He also reports that the arrival of the packages seems to cause concern for the child. Mr. Marinaro reports that he finds the fruit deliveries to be menacing and bizarre. He reports that he wishes that the mother would send more typical gifts for the child so that the child could feel happy that the mother is thinking of him.

On January 10, 2020 as well as February 7, 2020, pursuant to several motions involving the aforementioned alleged health issues of the Plaintiff, this Court ruled that Ms. Marinaro would be allowed to obtain an expert to review several medical records of Mr. Marinaro. The Court ordered that records from various providers would be released under an order of protection to the expert, the Defendant, the GAL and Counsel for Mr. Marinaro for review by the expert for the purpose of determining whether Mr. Marinaro suffers from any medical condition that would render him an incapable parent for the parties' minor child.

Ms. Marinaro testified under oath that she had retained an expert. She provided his resume and credentials. Subsequently, Ms. Markiewicz confirmed that the expert was engaged and has reportedly sent the medical records by UPS for his review. The undersigned has determined that it is not possible to wait for the expert report to finalize this report. If the report is submitted and reviewed and if the report alters the

recommendations herein, amended recommendations will be provided to the Court and the parties as may be appropriate.

During the same time period, Ms. Marinaro has also filed multiple documents attacking the personal veracity and integrity of the undersigned as well as Ms. Markiewicz, who represented Mr. Marinaro until February 20, 2020. Ms. Marinaro's written attacks, titled as "objections" persisted despite this Honorable Court's January 10, 2020 explicit admonition to Ms. Marinaro to cease with personal attacks on Counsel and the GAL. The most recent filing does not seek any specific relief, but appears to be a list of grievances regarding the July 2019 *Pendente Lite* report of the undersigned (recommending shared custody), as well as the character of the undersigned generally. In the aforementioned writing, Ms. Marinaro attached as an exhibit anonymous internet-based attacks on the undersigned in direct defiance of Judge's Mahan's explicit instruction on January 10, 2020 that the Court would not consider anonymous internet statements or personal attacks in this matter.

Between September 2019 and the present, Ms. Marinaro has alleged on multiple occasions in numerous motions before the Court that she has been physically abused by the father, most recently alleging that the father would place his fingers in her nostrils and drag her to the floor by her nostrils. She alleged that he would do this to avoid leaving a mark on her. Ms. Marinaro reported to the undersigned and has repeated in multiple pleadings that Mr. Marinaro kicked her at some point during the marriage, injuring her.

## 3. Judicial Settlement Conference February 11, 2020 – Hampton, Virginia

Pursuant to the Court's January 10, 2020 ruling denying Mr. Marinaro's request to waive the Judicial Settlement Conference due to his belief that it would not be productive, a Judicial Settlement Conference was held on February 11, 2020 in Hampton, Virginia. The location was the preference of the settlement judge. The conference concluded with no settlement.

The undersigned did not appear personally pursuant to Judge Mahan's ruling allowing the GAL to appear by telephone for any discussion of custody and visitation issues. Reportedly, the conference concluded with no discussion of custody or visitation. A written agreement filed with the pretrial brief and attachments thereto indicate that the only matter resolved during the judicial settlement conference was the use and title of the parties' vehicles.

## 4. Pretrial Conference February 20, 2020

On February 20, 2020, the pretrial conference was conducted. At that time, Ms. Marinaro attempted to argue various motions, however, the Honorable Steven Frucci declined to hear the motions. Judge Frucci also declined to hear Ms. Marinaro's testimony statements regarding her difficulty reciting the pledge of allegiance due to her belief that the phrase "and justice for all" does not reflect the way she has been treated thus far.

The Court determined on February 20 that the issues to he heard at trial include custody, visitation, child support, spousal support, attorneys' fees, GAL fees, and equitable distribution. The Court also entered an Order allowing Ms. Markiewicz to withdraw per her motion, and held that the trial would proceed on March 12, 2020 without exception or delay.

On February 20, the Court also granted the oral motion of the undersigned to be excused from appearing on any motions that Ms. Marinaro may file prior to March 12, 2020.

## II. RECOMMENDATIONS:

### A. Custody and Visitation/Parenting time *Pendente Lite*:

#### 1. Custody

##### A. Legal Custody

I recommend that the father be awarded sole legal custody.

I recommend that the matter be transferred to the Juvenile Court after the entry of the instant Final Decree and that when and if the mother gains any insight into how to become a cooperative and appropriate co-parent, she may file the appropriate pleadings to obtain a more active role in her child's life.

##### B. Physical Custody

I recommend that the father have sole physical custody. I recommend that the mother have only therapeutic contact with the child, and that said contact be in sessions with a family therapist who may be able to assist with reunification between A        and his mother, as well as work with the mother and child on issues related to the child's anxiety surrounding the parents' difficult relationship and the mother's reactions thereto.

If the mother amends her view regarding supervised visitation, I recommend that she also be awarded supervised visitation, at The Family Enrichment Center, the Up Center, or another licensed facility in the city where the child and father reside, once every other weekend (Sunday 2-4 pm) until such time as she may be able to obtain unsupervised visits from a court of competent jurisdiction.

##### C. Relocation/Travel/Passport

Based on the father's expressed desire to relocate, I recommend that the father be permitted to relocate with the child to any location where he has more family and financial support. I recommend that this permission be granted in the child's best interests due to the financial and emotional hardship that has reportedly been caused by the excessive litigation inflicted by Ms. Marinaro. Due to the outstanding criminal charged against Mr. Marinaro, these recommendations are subject to the terms of his bond, as well as any restrictions that may be imposed by any Court pursuant to his pending charges.

Barring any prohibition by the Court, I recommend that Mr. Marinaro be permitted to relocate closer to family so that A⸻ ' may be able to have a relationship with extended family due to the mother's refusal to comply with the terms of her visitation, thereby withdrawing herself from the parent/child relationship. If the mother is not willing to have a relationship with the child, it seems that the child should be able to cultivate relationships with extended family.

I recommend that the father retain the child's passport and that he be permitted to travel with the child and that he provide notice to the mother to the extent that communication between them is not barred by any protective order, bond conditions, or other court mandate or order.

## III. BASIS FOR RECOMMENDATIONS

This report is based on in person interviews with each parent in my office during summer 2019 (two with the mother and one with the father), three (3) visits with the child in my office between July 2019 and the present, a review of photos of the marital residence, contact with each attorney while the mother was represented, contact with the father's counsel, dozens if not hundreds of emails and other writings of the mother, as well as exposure to the mother during numerous court appearances in 2019 and 2020, telephone interviews with the father in 2019, a review of written materials provided by both parents, a review of school records and report cards in 2019 and 2020, multiple interviews with the child's counselor at CHKD in 2019 and 2020, a review of all of the child's therapy notes from CHKD from the initiation of his therapy in 2019 to the present, interviews with school personnel including the principal, office staff, and teachers at Thalia Elementary in 2019 and 2020, a review of the child's medical records, a review of pleadings and transcripts from multiple hearings in 2019 and 2020, a review of the father's medical records from several healthcare providers, a review of the mother's employment records with the Norfolk Public Schools, a review of the report of the results of the psychological evaluation commissioned by the mother in 2019, a review of a transcript of depositions conducted by the mother of school personnel, personal attendance at the mother's January 2020 depositions of the maternal grandmother and the father, and a review of all filings of both parties in Virginia Beach Juvenile and Domestic Relations Court as well as in the ⸻ Circuit Court in 2013 - the present.

## IV. SUMMARY OF INFORMATION

### A. MOTHER – Oksana Marinaro:

The mother has consistently reported that she believes that the father is unable to provide proper care for A⸻    She has reported that she believes the father provides a poor nutritional balance for the child, and that he feeds him excessive amounts of pasta and fast food. She has reported that the father's excessive reliance on tomato sauce in the child's diet has caused problems for the child. She has reported in Court that she believes that the father suffers from medical issues that render him incapable of caring for A⸻    and she has reported that she believes that the father often falls unconscious, which is unsafe for A⸻

She has tearfully testified that she believes that evidence will support that Mr. Marinaro eats at McDonalds or other fast food restaurants with an alarming frequency and that he has digestive issues that preclude him from eating anything except pasta. She has reported that she has been sending fresh fruit to the father's home because that is A_____s only opportunity to have access to fresh food. She has testified that she believes that A_____'s life is in danger in his father's care.

The mother has, since the entry of the *Pendente Lite* Order, appeared in Virginia Beach Juvenile Court on at least two occasions seeking protective orders or other remedies for the abuse she alleges the father inflicted on her. She has reported to the magistrate, the Court and the undersigned that the father used to drag her to the ground by her nostrils. The mother was denied a protective order by the Juvenile Court and subsequently filed criminal charges with the magistrate, alleging abuse by the father. The mother did not report to the Court that the matter was pending in Circuit Court or that the child's interests were represented.

The mother has reported on several occasions that she believes that the undersigned is not adequately representing the child's interests, that she believes that the undersigned has perpetrated a fraud on the court, and that the undersigned is involved with a concerted effort with the father and his attorney to deprive her of her rights. The mother went to the police in late 2019 seeking to have the undersigned arrested for perjury and fraud. The mother has reported on several occasions that she feels very strongly that this matter has not been adjudicated fairly, that all of the court personnel and attorneys involved have mistreated her, discriminated against her, and that she has been the victim of abuse, maltreatment, and discrimination on the basis of her national origin. She has provided multiple statements orally and in writing that she is already preparing her appeal on various issues. The mother's vehemence and conviction on these issues is unwavering.

The mother has reported that she is an "excellent educator" and that her employment record should prove that she is an appropriate person to care for her child. She has reported that she is trusted by the school system and should be awarded custody based on her prowess as an educator.

The mother's employment records do not corroborate her account of her history as an exemplary employee.

## 2. Written Responses – July 2019

Ms. Marinaro's written responses were consistent with her interview statements. Her responses indicated that due to his being a man, Mr. Marinaro lacks the ability to cook nutritious food for A_____ She expressed concerns that Mr. Marinaro feeds the child excessive amounts of fast food and unhealthy cuisine.

She expressed concern about the child's tics and other health issues. She expressed that, based on her being the child's mother and a woman, that she should be granted primary custody. She expressed in her responses that she believes that the father is too old to be an appropriate primary care provider and that his age precludes him from being

able to care properly for the child. In her responses, Ms. Marinaro made various claims that Mr. Marinaro is an abusive partner.

In discovery in 2020, Ms. Marinaro has stated that Mr. Marinaro would often physically abuse her by putting his fingers in her nostrils and dragging her around the marital residence. She has stated that he performed this task to avoid leaving a mark on her as other types of abuse may. She initially reported this allegation in a pleading filed with the magistrate in late 2019, but reported one such incident in that complaint. Her discovery responses report multiple incidents of this type of assault.

Ms. Marinaro has also prepared written statements in her motions as well as discovery regarding her belief that Mr. Marinaro is physically unfit to care for A          , citing a medical condition that she alleges renders him incontinent at times and unconscious at times. She has not provided corroborating evidence of any such incident; however, she has stated in pleadings on multiple occasions that she cannot provide proof of these claims without access to Mr. Marinaro's medical records. She has not provided any documentation of him falling unconscious at school events, while driving, or any other information that would not require medical records to be disclosed.

On February 7, 2020, this Court ruled that Ms. Marinaro would be permitted access to some of Mr. Marinaro's records to have an expert review them for the purpose of offering an opinion regarding her assertion that the father is too infirm to care for A          . Ms. Marinaro provided the resume and retainer contract for an expert. She testified under oath that she had retained the expert. The Court ordered that this expert would be permitted to review the records and offer an opinion, but also ruled that no other extensions of the pretrial and other deadlines would be permitted. It is unclear as of the preparation of this report whether any opinion or analysis of this issue will be forthcoming.

The father's medical records do not appear to corroborate Ms. Marinaro's assessment of his overall health.

**B.    FATHER – Domenick Marinaro:**

The father has expressed continued concern about the mother as it relates to her judgment and her behavior. Mr. Marinaro has reported specific concerns about her emotional outbursts and her propensity to tell the child excessive and upsetting details about     her negative opinions about the father.

The father reports that when the parties were separated within the residence. Ms. Marinaro was prone to fits of rage and often screamed and yelled at him and at A about various topics such as food, her opinion of the father, and other random issues. He also reported that Ms. Marinaro would sometimes become so enraged that she would push A        and would physically confront and/or assault Mr. Marinaro.

The father reported that he believes that the mother is not able to spend time with A          safely due to her emotional outbursts, irrational rantings, and aggressive

behavior towards him and towards anyone who does not support her extreme belief that she is the only person who is able to care for A

The father reported that he has been the primary caregiver for the child for the entirety of the child's life, and that the mother has participated, but sometimes in a counterproductive way. He provided the child's entire medical history. The parents agree that the child suffers from tics and that the tics are exacerbated by stress.

The father resides in the formal marital residence and reports that he has an active support system in his neighborhood, among friends, and within the school.

### 2. Written Responses – June 2019

The father's written responses were consistent with his interview statements. He reported that he has been the child's primary care provider since his birth. He reported that he takes the child to the majority of his appointments and events. He reported that he believes that he should remain the primary caregiver.

In his written responses, he expressed concern about the mother's volatility as well as the possibility that she may attempt to take the child out of the country and not return. He reported that he does not have a history of arrests or convictions, and that he does not have a history with CPS.

He reported that the mother has been physically violent with him and that she has subjected the child to upheaval as a result of her erratic behavior. He provided a video of an altercation he had with the mother while he was holding A        and the mother can be seen on the video attempting to grab the child from him. He reported that he and the mother were separated previously in 2013-2014 and that he obtained primary custody at that time. He reported that they reconciled and that he remained the primary caregiver consistently.

### C.  THE CHILD – A        / M         , age   (DOB

The undersigned has observed and interviewed A        on several occasions. He appears to be typical in size for a child of his age. His school records indicate that his intellectual and social development are at or above age level in all areas. A        has expressed certain views and opinions which have been taken into account when formulating the recommendations herein.

Further information has been gathered. It has been submitted to the Court under seal, as it contains hearsay which may be the subject of motions or objections, so it appears necessary to protect this information absent a ruling regarding whether the Court should consider it as a basis of the recommendations herein. If the Court wishes to view the detailed account of interviews and observations of the child, it is available in the sealed filing that was attached to this report.

### D.  COLLATERAL INFOMRAITON

#### 1.  School Information –

**MARINARO v. MARINARO**
**Report of the Guardian *Ad Litem***

817

A        ' is in 3rd grade at Thalia Elementary. School records show and school personnel corroborate that his grades are at or above grade level in all subjects, and he excels in science and math. He has no social or behavioral issues, according to his 2nd grade report cards and teacher comments as well as the reports of his parents. A        has no current behavioral record or discipline issues as of the date of writing of this report.

Further statements by school personnel are available in the aforementioned sealed information that was submitted to report for consideration after any relevant arguments regarding whether it should be considered have been heard by the Court.

School records corroborate Mr. Marinaro's statement that he has transported the child to and from school on time each day, that he has attended school functions and that he has volunteered at the school and is well known to school personnel.

School records indicate that Mrs. Marinaro was unknown to school personnel until September 2019.

## 2. Medical Records – A    ' M:

Medical records indicate that the child has been to the doctor regularly, both for routine well checks and for visits related to various medical issues including ear infections, digestive issues, and tics. The child appears to have had competent, appropriate, attentive care from medical professionals as well as both of his parents. The father appears to have been the primary person to tend to these issues. A thorough review of the medical records indicates that the mother has taken the child or accompanied the child to doctor visits approximately 25% of the time. The father appears to have taken A      to the doctor approximately 75% of the time.

The child's medical records appear to corroborate Mr. Marinaro's statements that the child is overall a healthy child. The records also corroborate Mr. Marinaro's statements that he has cared for the child routinely during and after the marriage.

The child's medical and counseling records corroborate Ms. Marinaro's statements that she was an active participant in A      's care prior to October 2019.

## 3. Child's Counselor – CHKD

CHKD records indicate that between the beginning of his therapy in 2019 and February 20, 2020, A      has seen his therapist six thirteen (13) times. The therapist has made statements to the undersigned that were considered when formulating the recommendations herein.

Because it is unclear whether the parties will subpoena the child's counselor, or whether her statements would constitute objectionable hearsay, the comments that

formed part of the basis of these recommendations have been submitted under seal for reservation until after the evidentiary issues have been considered.

### 4. Father's Former Spouse

The father provided a letter from his former spouse in 2019. The letter was considered during the preparation of this report. Information about the contents of the letter has been submitted under seal, subject to the evidentiary considerations previously discussed herein.

### 5. Medical Records – Mr. Marinaro

Records from several medical providers have been considered when formulating the recommendations herein. If the mother presents her expert to discuss the records, the undersigned will present evidence regarding same in the form of cross examination.

### 6. Psychological Report – Ms. Marinaro

Ms. Marinaro commissioned a psychological report from a psychologist in Northern Virginia. She has provided the report to the undersigned, Counsel for the Plaintiff, and the Court. The contents of the report were considered in the formulation of the recommendations herein. The report corroborated Ms. Marinaro's statements about her parental fitness.

### GAL ASSESSMENT OF THE FACTORS
### VIRGINIA CODE SECTION 20-124.3

A thorough analysis of the factors has been conducted in formulating the recommendations herein. A detailed summary of same has been submitted under seal for consideration if the Court deems it appropriate after considering any objections or issues related to the contents, which include out of court statements of school personnel, the child, and medical personnel.

### END OF REPORT

### Respectfully Submitted,

*GAL for A            M*

## GAL REPORT CONFORMING TO THE STANDARDS TO GOVERN THE PERFORMANCE OF GUARDIANS *AD LITEM* FOR CHILDREN as adopted June 23, 2003

The undersigned Guardian *Ad Litem*, Bretta Z. Lewis (VSB# 45574), appointed by this Court on May 17, 2019, hereby respectfully submits the following report in strict adherence to the applicable standards governing the performance of Guardians *Ad Litem*:

A. The undersigned met face-to-face and interviewed the child on three occasions in 2019 and 2020, the most recent of which occurring in January 2020;

B. The undersigned hereby asserts that an independent investigation was completed in order to ascertain the facts of the case. The investigation begun in June 2019 and completed on February 20, 2020.

C. In July 2019 and most recently on January 7, 2020, the undersigned advised the child, in terms the child appeared to understand, of the nature of all proceedings, the child's rights, the role and responsibilities of the Guardian *Ad Litem* (GAL), the court process and the possible consequences of the legal action.

D. The undersigned participated, as appropriate, in pre-trial conferences, mediation and negotiations, including the following: availability by telephone on February 11, 2020, Pretrial Conference on February 20, 2020, several attempts at negotiation by letter and email 2019 – present.

E. The child has been interviewed several times, as has his therapist. It has been determined by the undersigned, after multiple consultations with the therapist, that the child's attendance would not be appropriate at the hearing due to the child's tics which are exacerbated by stress, as well as the child's expressed desire not to be involved with his parents' conflict. As such, the undersigned has not requested that the parent who will have custody of the child on the date of the hearing transport the child to the hearing scheduled for March 12, 2020.

F. The undersigned hereby certifies that she has made arrangements to appear in court on the dates and times scheduled for hearings prepared to fully and vigorously represent the child's interests.

G. Due to the considerations in paragraph E, supra, the undersigned has not prepared the child to testify, as it has been deemed inappropriate, in accord with the child's interest and welfare. As and for the reasons for determining whether the child's testimony was necessary and appropriate, the undersigned hereby states as follows: the child suffers from stress-induced facial and corporal tics; the child has trouble expressing his feelings about his parents; the child has expressed that he believes that the parents' divorce was caused by their arguing about his diet; and the child has expressed that he does not want to be part of his parent's conflict and that hearing them argue causes him extreme stress.

H. The undersigned hereby certifies that she has gathered, distilled, and considered sufficient information during the course of the independent investigation. The undersigned has provided a specific recommendation for court action based on the findings of the interviews and independent investigation as follows:

A recommendation was made in July 2019 *Pendente Lite* for shared custody to the parents.

The current recommendation based on information gathered subsequent to July 2019 is for sole custody to father.

FILED

20 FEB 25  AM 11: 28

Page 1 of 2

MARINARO v. MARINARO

BZL WRG FORM 8119 - GAL REPORT FOR CERTIFICATION OF ADHERENCE TO STANDARDS    820

Information gathered included a multitude of documents and interview statements. A detailed list of sources of information gathered is included in the GAL report filed herewith.

I. The undersigned hereby certifies that she has communicated, coordinated, and maintained a professional working relationship in so far as possible with all parties without sacrificing independence. The undersigned has experienced some barriers due to the behavior of the parties and/or counsel as follows: The Defendant has lodged multiple personal attacks on the undersigned that have caused the undersigned to fear for her personal safety. As such, the undersigned has limited contact with the Defendant since October 2019 to written communications and public hearings.

J. The undersigned hereby certifies that the parties have filed the appropriate petitions to initiate the matter.

K. The undersigned hereby certifies that the undersigned has filed multiple motions and pleadings on behalf of the child's interests in 2019 and 2020, as reflected in the Court's record.

L. The undersigned has not been requested by the Court to file any briefs in this matter, however should a brief be required or requested by the Court, the undersigned shall comply.

M. The undersigned hereby asserts that if the ruling in this matter is not in keeping with the undersigned's assessment of the child's best interest, that an appeal shall be filed on behalf of the child. The undersigned shall file the appropriate motions to ensure the child is represented by a GAL in any appeal involving the case, provided that the cost of preparing same will be covered in advance.

N. The undersigned hereby certifies that she will make a good faith effort to advise the child in terms the child can understand, if the ruling changes the child's situation, of the court's decision and its consequences for the child and others in the child's life unless the Court waives this provision for good cause upon verbal motion of the undersigned.

Respectfully submitted,

_Guardian Ad Litem_

## Certificate of Timely Submission

The undersigned hereby certifies that this report was submitted via FEDERAL EXPRESS to the Court on February 24, 2020, which is more than five (5) days prior to the hearing, which is set for March 12, 2020.

_Guardian Ad Litem_

## Certificate of Transmission

The undersigned hereby certifies that this report has been sent via mail to the parties, who are both _pro se_ on this 21st day of February 2020.

_Guardian Ad Litem_

Page 2 of 2

MARINARO v. MARINARO

# EXHIBIT# 7

CW000005

**Oksana Marinaro ▶ Andy Fox WAVY TV**
June 9 · 🌐    •••

Crystal Wilkerson, a principal at Thalia Elementary, Virginia Beach, committed abominable, vile, heinous act towards my child. My ex-husband substitutes for teachers at Thalia free of charge as a volunteer who has a maniacal desire to have a sole custody of our child just in order to make me suffer and who physically abused me. To pay him for his work Crystal Wilkerson called judicial authorities and lied about me and my child with the purpose to deprive my child of his mother. Due to her call, I was separated from my son for six months. It cost me a lot of efforts and money to prove the inadequate behavior of Crystal Wilkerson in order to get my son back. I had to take the deposition on her and some other teachers from Thalia Elementary. Those teachers did not confirm Crystal Wilkerson's lies.

Itis a shame that the Virginia Beach City Public Schools permits parents to substitute for teachers, but our children have to pay for that. I would like to know if Crystal Wilkerson has her own children and whether she is familiar with a mother's feeling whose child was separated from her.

What a despot a person should be if she purposely calls judicial authorities to bring her student grief and despair.

Because of Crystal Wilkerson, I was prohibited any contact with my son, and my son for six months was running after each car he saw on the street that was similar to my car, this is how much he was missing his mother.

👍 Like          💬 Comment          ➤ Share          ●▾

Write a comment...          😀 😊 📷 🎞 🎁

---



8:49 ◀    ◀ Mail          .ıll 🛜 ▢

🔒 greatschools.org

Review    ♥ Save    🏫 Nearby schools    😎

at this school?

☆ ☆ ☆ ☆ ☆
Terrible  Bad  Average  Good  Great

## RECENT COMMENTS



Parent
**Overall experience**
☆

To assign Crystal Wilkerson as a school principal was equivalent to putting KGB or NKVD in charge of the school, which existed during Stalin's repressions. They should revoke her license and prohibit her to work with children for the rest of her life.

Submitted by a parent  June 07, 2020

          

Parent
**Overall experience**
★ ★ ★ ★ ★

This is our son's 3rd year at Thalia. We've been very pleased

# EXHIBIT# 8

CW000001



**VIRGINIA BEACH CITY PUBLIC SCHOOLS**
CHARTING THE COURSE

December 11, 2020

Via Certified Mail/Return Receipt Requested

Oksana Marinaro
3901 Roebling Ln
Virginia Beach VA 23452-1862

RE: Limitation of communication to staff and access to Thalia Elementary School property

Dear Ms. Marinaro:

This letter is to inform you that, under School Board Regulation 7-17.1, I am limiting your access to Thalia Elementary School ("Thalia Elementary") property and limiting your communications with Thalia Elementary administration and staff because of your disruptive conduct on June 11, 2020. This limitation of access must be imposed because of your disruptive conduct and inappropriate interactions with school administration and staff.

This incident is not the sole occurrence of your disruptive behavior at Thalia Elementary. In the fall of 2019, your student's father provided school staff with a custody order and written permission to communicate with your student's court-appointed guardian ad litem. Soon thereafter, Mr. Marinaro had sent in a note to the teacher that he would be picking up your student during parent pickup. During the dismissal process, you called the office to say you wanted your student to ride the bus home. The school secretary advised you that Mr. Marinaro had sent a written note to your student's teacher, that your student was at parent pickup, and school staff may make changes during dismissal for the student's safety. You raised your voice, cursed, and told the school secretary you were coming to the school. I was in the gym during the parent the parent pickup process. To protect "students, staff and property," School Board Policy 7-17 (A) requires staff and visitors during the school day first "report to the security desk or the main office for authorization to be in the building or on the grounds and to receive and wear a visitor's identification badge." Mr. Marinaro was in line to present his ID as required by school safety protocols and school pickup procedures while your student waited in the partitioned area in the gym designated for students awaiting parent pickup. Four school staff members witnessed you violate school safety and parent pickup procedures when you bypassed the partition, grabbed your student's arm, attempted to remove him from the gym. School staff intervened and I walked over to you and said you had to follow the school safety protocols and pickup procedures. By that time, Mr. Marinaro had signed your student out. You left Thalia Elementary with your student and Mr. Marinaro. For clarity, in this letter I will refer to these events as the "Dismissal."

On October 17, 2019, I received a certified letter from you in which you made accusations against Mr. Marinaro and enclosed online reviews of your student's guardian ad litem. On November 8, 2019, I, and four members of my school staff, were served with witness subpoenas to appear at a deposition to testify about the Dismissal described the in earlier paragraph. In early November 2019, you came to Thalia Elementary and asked to speak with me about the events you believed occurred during the Dismissal. I told

CW000002

you I was served with a deposition subpoena and would discuss the matter then. In mid-November 2019, a detective from the Virginia Beach Police Department (VBPD) came to Thalia Elementary to interview the four staff members who witnessed the Dismissal and me about a complaint reported to the VBPD against your student's guardian *ad litem.*

On June 7, 2020, you posted to Thalia Elementary's Twitter page that I was the "equivalent to putting KGB or NKVD in charge of [Thalia Elementary]" and I "should be prohibited from working with children." These comments are false, malicious statements about my professional reputation. On June 10, 2020 you cast the same aspersions against my professional integrity in separate posts to Virginia Beach City Public Schools [VBCPS]'s and WTKR News 3's Facebook accounts.

On June 11, 2020, Thalia Elementary administration and staff lined up around the bus loop to wave goodbye to students who were passengers in vehicles. While your student remained in the backseat of your vehicle, you got out of your vehicle and passed out flyers to school staff. In these flyers, you again attacked my professional character with statements mirroring your false and misleading social media posts made on June 7 and 10, 2020. In addition, you sent an email with the same unfounded and derogatory allegations to the School Board.

Your actions—particularly those on June 11, 2020—raise significant safety concerns. School staff, students, and parents saw your escalating behavior and disruptive conduct.

Protecting students and staff is a top priority for all school districts. Safety in our schools is extremely important and Virginia Beach City Public Schools is vigilant about supporting a safe school environment.

As principal, I must maintain an educational environment that is safe, orderly, and conducive to learning. The staff of Thalia Elementary is dedicated to addressing your student's educational needs. However, I am responsible for the needs of all students and school personnel. Therefore, I am limiting your access to school property beginning June 24, 2020. Your online access to Parent Portal has not changed. Normal classroom communication will be sent home for your student. You may communicate with the school nurse at Thalia Elementary about any medical issue, as necessary. However, you are prohibited from contacting school staff, accessing school property, or attending school activities, and school-sponsored events without first obtaining my approval. You are limited to one email or telephone call per week to address your student's school issues. These limitations are necessary to prevent further disruption to the educational environment at Thalia Elementary. The School Division's priority is providing quality educational services to all students in a safe environment.

If you do not comply with these limitations, measures will be taken to prevent further disruption to the educational environment. By copy of this letter, I am authorizing the VBPD and the Virginia Beach City Public Schools Office of Safety and Loss Control to take all necessary actions to enforce this letter.

Under School Board Regulation 7-17.1(E), you may make a written appeal of this decision to the Department of School Leadership within five days of this letter. Your written appeal can be sent to Shirann Lewis, Senior Executive Director of Elementary Schools, Department of School Leadership, 2512 George Mason Drive, Virginia Beach, VA 23456.

Sincerely,


Crystal L. Lewis-Wilkerson, Ed.D., NBCT
Principal, Thalia Elementary School

2

CW000003

Cc (via email):    Shirann Lewis, Senior Executive Director of Elementary Schools
Sterling White, Ed.D., Director of Elementary Schools
Thomas A. DeMartini, Director, Safe Schools
Dannielle Hall-McIvor, Associate City Attorney

3

# EXHIBIT# 9

1    **WITNESS:**  It was the last day of
2    school in 2020, so roughly...
3    **THE COURT:**  June 17th or
4    something?
5    **WITNESS:**  Yes, roughly.
6    **THE COURT:**  Okay.
7    **WITNESS:**  Roughly.  During this
8    time, you had, we had been in school closure,
9    students were learning virtually, as were all
10    students across the nation.  As a means for our
11    students to have some sort of normalcy, we had a
12    drive-through celebration for our students to at
13    least have an opportunity to say goodbye to their
14    teacher.  Excuse me.  So teachers were lined
15    around the, what would have been the bus loop at
16    that time, we have switched things, but at that
17    time it was our bus loop.  Students were lined
18    and parents drove through with their cars, honked
19    their horns, waved goodbye, all of those things.
20    Many students were giving flowers to their
21    teachers, or a cards or letters thanking them.
22    Again, it was just a, a means to provide a little
23    sense of closure to the school year, that was
24    already a hard school year for our students.  So
25    at that time, Ms. Marinaro had driven through


VETERAN
REPORTERS



855.667.0077
VETERANREPORTERS.COM

1  the, the drive-through and parks her car, and

2  gets out and starts passing out sheets of paper.

3  Teachers, again, were receiving all kinds of

4  things from children, flowers and cards, and

5  whatnot, and so they received them, and one of

6  my, my teachers says to me, Dr. Wilkerson you

7  need, you need to see this, and she was very

8  upset about it, and that's when she showed me the

9  literature that she was passing out to my staff

10 that indicated that I was part of the KGB, and

11 that I caused her to lose custody of her child,

12 and all of these terrible things, to my staff.

13 At that time, she gets ready to get back into her

14 car and indicates, I told her she would hear from

15 our attorney, because that's inappropriate, you

16 don't, you don't do that, this is not about

17 anything other than celebrating the end of a very

18 difficult school year, and she further

19 complicated things with the staff, and in my

20 opinion, with A

21      Q.   All right...

22           MS. MARINARO:  Oh I'm sorry, I

23 didn't understand about complicated stuff...

24           THE COURT:  I'm sorry, you

25 didn't...

 

1        **MS. MARINARO:** Objection.

2        **THE COURT:** Hold on, she's

3 testifying.

4        **MS. MARINARO:** That is not the

5 question.

6    A.   Now, because we...

7    **Q.   The question is the date on the letter.**

8    A.   And I'm answering the fact that the

9 date is dated December 11th, because you

10 continued to harass me by sending letters to the

11 School Board, by posting things about me being

12 aligned to the KGB and whatnot to social media

13 outlets and whatever, and it continued to be a

14 disruption to the learning environment.

15    **Q.   Why did you send me the letter in July?**

16    A.   I don't have...

17    **Q.   ... and you have the December date on**

18 **the letter?**

19    A.   Because I wrote the letter in December

20 with continued harassment, and your continued

21 accelerated and inappropriate behavior. You were

22 not getting better with your behavior, you were

23 getting worse. So at that point...

24    **Q.   This was...**

25        **THE COURT:** Hold on, she's




# EXHIBIT# 10



## City of Virginia Beach

MARK D. STILES
CITY ATTORNEY

December 1, 2020

VBgov.com

MUNICIPAL CENTER
BUILDING 1
2401 COURTHOUSE DRIVE
VIRGINIA BEACH, VA 23456-9004
(757)385-4531
FAX (757)385-5687
TTY: 711

*Via Email Only (omarinaro@hotmail.com)*

Ms. Oksana Marinaro
3901 Roebling Ln
Virginia Beach, VA 23452-1862

Re: Communications to the School Board of the City of Virginia Beach

Dear Ms. Marinaro:

The School Board of the City of Virginia Beach (School Board) has received your emails, including the documents you attached. The personnel issues presented in your communications were investigated and your claims were found unsubstantiated. The School Board will not discuss this matter any further.

In addition, the Virginia Beach Circuit Court Clerk's records show that on October 15, 2020, you filed a notice of appeal to the Court of Appeals of Virginia from a final decree of divorce (September 18, 2020) and other orders, including an order denying your motion to reconsider (September 3, 2020) and an order denying your motion to reconsider, rehear, and vacate the final divorce decree (October 5, 2020) entered by the Circuit Court for the City of Virginia Beach. The School Board cannot comment on factual or legal issues directly raised in your notice of appeal.

As you are represented by counsel, you must direct your communications only to School Board Legal Counsel; you may not contact any member of the School Board or any employee of Virginia Beach City Public Schools.

Sincerely,

Dannielle Hall-McIvor
Associate City Attorney

cc (via email):    Brandy M. Poss, Counsel for Ms. Marinaro
Carolyn Rye, Chair, School Board of the City of Virginia Beach
Aaron Spence, Ed.D., Superintendent, Virginia Beach City Public Schools
Crystal Wilkerson, Ed.D., Principal, Thalia Elementary School
Kamala H. Lannetti, Deputy City Attorney for Public Education

# EXHIBIT# 11

1          **THE COURT:**  Can I stop you for a

2  second?

3          **WITNESS:**  Yes.

4          **THE COURT:**  For my benefit, I

5  believe based on what I have heard there are two

6  bus routes for this child, one when he is with

7  the father, and another one with the mother.

8          **WITNESS:**  I found that out...

9          **THE COURT:**  Whose route, which

10 route were you doing that day, or do you know?

11         **WITNESS:**  Apparently this is mom's

12 route.

13         **THE COURT:**  Okay.

14         **WITNESS:**  I don't know about the

15 dad's route.

16         **THE COURT:**  Okay.

17    A.    I pulled up for dismissal, I want to

18 say about 2:55.  All the kids got off.  You came

19 to my door asking me where your son was.  I

20 yelled for his name, he didn't pop up, he wasn't

21 on the bus.  I told you to call the school, and I

22 also told you that I had to go back to the school

23 because I had a double.  I go back to the school,

24 I ask Mr. Williams if A      /...

25         **MS. MARINARO:**  Objection.

Marinaro vs Marinaro A. West Testimony    April 11, 2022    VR # 9512-21                Page 7

1              THE COURT:  No, hold on, she's

2    answering your question.  All right, go on.

3              MS. MARINARO:  She refers to the

4    third party.

5              THE COURT:  Sorry?

6              MS. MARINARO:  She refers to the

7    third party.

8              THE COURT:  To the third party?

9              MS. MARINARO:  Yeah, the question,

10   yes, that she is told to...

11             THE COURT:  She's asking what

12   you...

13             MS. MARINARO:  ... someone.

14             THE COURT:  Overruled, go ahead,

15   continue on as you recall.

16      A.  I went back to the school, I asked Mr.

17   Williams if A:       M       was there, that mom

18   was at the stop looking for him.  He confirmed he

19   was not at the school.  Then I got Dispatch

20   calling me on the radio asking about the same

21   student.

22             MS. MARINARO:  Oh I'm, I'm sorry,

23   I object again at hearsay.

24             THE COURT:  She's your witness,

25   she's telling us what happened.  I thought this





**855.667.0077**
VETERANREPORTERS.COM

1  was to your benefit.

2              **MS. MARINARO:**  I, I do not want my

3  witnesses...

4              **THE COURT:**  I know, I told...

5              **MS. MARINARO:**  ... to say hearsay.

6              **THE COURT:**  Well, good lawyers

7  know that when they are eliciting hearsay that is

8  favorable for them, to a certain extent, then

9  they just sit down and they don't say anything.

10  So continue on, ma'am.  That's overruled.

11     A.   Dispatch told me that they were on the

12  phone with police, so then I went back to Mr.

13  Williams and asked...

14              **THE COURT:**  Who is Mr. Williams?

15              **WITNESS:**  He is a PE teacher at

16  Thalia who does the bus transportation stuff.

17     A.   He went and got the teacher and

18  confirmed that the student was put on Bus 493,

19  which apparently goes to dad's route.  I did not

20  know that at that time.  And then my worries were

21  gone because the child...

22              **THE COURT:**  You were really

23  worried about it, I guess?

24              **WITNESS:**  Yes, the child was

25  found.





855.667.0077
VETERANREPORTERS.COM

# EXHIBIT# 12

12/3/22, 11:28 PM                                        Mail - Oksana Marinaro - Outlook

## RE: transportation change

### Sarah H. Branch <Sarah.Branch@vbschools.com>
Tue 11/9/2021 9:39 AM
To: Oksana Marinaro <omarinaro@nps.k12.va.us>

You don't often get email from sarah.branch@vbschools.com. Learn why this is important

Ms. Marinaro,

I understand that there was some confusion yesterday with Aı      s bus. I looked into the incident and A was given a pass to get on bus 293-J, per your email. His teacher said he still went on his regular bus, 493. In the future, we will not be able to accommodate bus changes like that. Transportation does not want students switching buses due to mitigation issues.
Thank you for your cooperation.

Sarah Branch
Office Manager/Bookkeeper
Thalia Elementary School
Phone (757) 648-3880
Fax (757) 431-4641
Put Students First • Seek Growth • Be Open to Change • Do Great Work Together • Value Differences

From: Oksana Marinaro <omarinaro@nps.k12.va.us>
Sent: Sunday, November 7, 2021 1:33 PM
To: ETHEMAIL <thaliaes@vbschools.com>
Subject: transportation change

CAUTION: This email is NOT from a VBCPS email account. Be careful about the content. Look carefully at the sender's email address before clicking links, opening attachments or sharing information. To inquire about a suspect email or to report an email, please forward the email as an attachment to itsecurity@vbschools.com
Greetings,

Aı      Mı       will ride bus 293J on Monday 11/08/21.

Thank you,
Oksana Marinaro

[ATTENTION! This email originates outside of NPS. Do not open attachments or click links unless you are sure this email comes from a known sender and you know the content is safe.]

# EXHIBIT# 13

**CW000029**



### City of Virginia Beach

VBgov.com

MARK D. STILES
CITY ATTORNEY

MUNICIPAL CENTER
BUILDING 1
2401 COURTHOUSE DRIVE
VIRGINIA BEACH, VA 23456-9004
(757)385-4531
FAX (757)385-5687
TTY: 711

November 15, 2021

*Via Email Only (omarinaro@hotmail.com)*

Ms. Oksana Marinaro
3901 Roebling Ln
Virginia Beach, VA 23452-1862

Re:  Limitation of Access
     Communications to the School Board of the City of Virginia Beach

Dear Ms. Marinaro:

The School Board of the City of Virginia Beach (School Board) and Aaron Spence, Ed.D., Superintendent, Virginia Beach City Public Schools, received your November 8, 2021 email. The personnel issues presented in your communications were investigated and your claims were found unsubstantiated. The School Board will not discuss this matter any further.

In addition, this letter serves as your third and final notice regarding your communication to the School Board and the Department of School Leadership. In your November 8, 2021 email, you raised serious allegations against Crystal Lewis-Wilkerson, Ed.D., Principal, Thalia Elementary School. Your description of the incident was incomplete and inaccurate. You ascribed your student's choice to take the incorrect bus to Dr. Lewis-Wilkerson's purportedly "negligent behavior." However, school staff followed the correct process: after your bus change request was received, school staff created bus change pass and delivered it to your student's classroom before dismissal. Your student's teacher gave him the bus change pass and acknowledged he knew what to do. Your student rode his traditional bus instead.

The driver of the bus 293J—the bus you requested he ride home that day—saw you and radioed the driver of your student's traditional bus route. The driver of bus 293J confirmed your student was on his traditional bus and verbally relayed this information to you. This bus driver also confirmed you called the police even though you already knew the location of your student's traditional bus stop; she saw you drive over to his traditional bus stop immediately after her conversation with you. Your student also reported to his teacher you were waiting for him at his traditional bus stop—the last stop on the route—when he got off the bus.

In addition, the Virginia Beach Police Department (VBPD) verified no police report was filed because no crime occurred. The number you referenced in your November 8, 2021 email was an incident number for the call for service. VBPD did not report the incident to Thalia Elementary School.

These facts show Thalia Elementary School staff correctly followed bus change protocol and school procedures. There are no facts showing negligence or wrongdoing by Dr. Lewis-Wilkerson or her staff. Your fifth-grade student was never "placed in danger" nor "found in the middle of the street alone with no

CW000030

means to contact his parents." Two transportation employees and your student independently confirmed you knew the location of your student's traditional bus stop and were waiting at this stop when he exited the bus on November 8, 2021.

Your November 8, 2021 email serves as the most recent example of your attempts to malign Dr. Lewis-Wilkerson's judgment and reputation. Official court records show you have engaged in similar behavior with other respected members of this community, including Virginia Beach Circuit Court judges. This pattern is unacceptable and unmerited. Dr. Lewis-Wilkerson and her staff strive to meet your student's educational needs, and they need your support as a parent. Thus, this letter serves as your final notice to not contact any member of the Virginia Beach School Board, central office administration, or the superintendent's office about Dr. Crystal Lewis-Wilkerson or Thalia Elementary school staff. You will not receive a response. In addition, your communication with Thalia Elementary school staff is restricted to the school nurse, your student's teacher, and the email address used for general purposes.

Sincerely,

*Danniello Hall–McIvor*

Dannielle Hall-McIvor
Associate City Attorney

CW000031

This memorandum summarizes the parent's disruptive behavior towards Thalia Elementary School administrators and staff during the 2019-2020 school year.

In the fall of 2019, the student's father, Mr. Marinaro provided school staff with a custody order and written permission to communicate with the student's court-appointed guardian *ad litem*. Soon thereafter, Mr. Marinaro sent his student's teacher a written note saying he would be picking up his student during parent pickup. During the dismissal process, Mrs. Marinaro called the office requesting her student to ride the bus home. The school secretary advised Mrs. Marinaro that Mr. Marinaro sent a written note to the student's teacher, the student was in the partitioned area in the gym for students awaiting parent pickup, and that school staff may make changes during dismissal for the student's safety. Mrs. Marinaro raised her voice, cursed, and told the school secretary she was coming to the school. Crystal L. Lewis-Wilkerson, Ed.D., NBCT, Principal, Thalia Elementary School was in the gym during the parent pickup process. To protect "students, staff and property," School Board Policy 7-17 (A) requires staff and visitors during the school day first "report to the security desk or the main office for authorization to be in the building or on the grounds and to receive and wear a visitor's identification badge." Mr. Marinaro was in line to present his ID as required by school safety protocols and school pickup procedures while the student waited in the partitioned area in the gym designated for students awaiting parent pickup. Four school staff members witnessed Mrs. Marinaro violate school safety and parent pickup procedures when she bypassed the partition, grabbed her student's arm, and attempted to remove him from the gym. School staff intervened and Dr. Lewis-Wilkerson walked over to Mrs. Marinaro and reminded her that all parents, students, visitors, and Virginia Beach City Public School staff must to follow school safety protocols and pickup procedures. By that time, Mr. Marinaro had signed the student out. Mr. and Mrs. Marinaro and the student left Thalia Elementary together. For this summary, I will refer to these events as the "Dismissal."

On October 17, 2019, Dr. Lewis-Wilkerson received a certified letter from Ms. Marinaro. In her letter, Ms. Marinaro lodged accusations against Mr. Marinaro and enclosed online reviews of the student's guardian *ad litem*, Bretta Lewis. On November 8, 2019, Dr. Lewis-Wilkerson and four members of her staff were served with witness subpoenas to appear at a deposition to testify about the Dismissal. In early November 2019, Ms. Marinaro came to Thalia Elementary and asked to speak with Dr. Lewis-Wilkerson about her recollection of the Dismissal. Dr. Lewis-Wilkerson said she was served with Ms. Marinaro's witness subpoena and would recount the Dismissal during her deposition. In mid-November 2019, a detective from the Virginia Beach Police Department (VBPD) came to Thalia Elementary to interview the Dr. Lewis-Wilkerson and the four staff members who witnessed the Dismissal as part of their investigation of a complaint filed by Ms. Marinaro against Bretta Lewis, the student's guardian *ad litem*. Dr. Lewis-Wilkerson answered the detective's questions about Ms. Lewis; Dr. Lewis-Wilkerson had no further interactions with the VBPD.

In June 7, 2020, Ms. Marinaro posted to Thalia Elementary's Twitter page that Dr. Lewis-Wilkerson was the "equivalent to putting KGB or NKVD in charge of [Thalia Elementary]" and "should be prohibited from working with children." Dr. Lewis-Wilkerson opined these were false, malicious statements about her professional reputation. On June 10, 2020, Ms. Marinaro cast the same aspersions against Dr. Lewis-Wilkerson's professional integrity in separate posts to Virginia Beach City Public Schools [VBCPS]'s and WTKR News 3's Facebook accounts.

On June 11, 2020, Thalia Elementary administration and staff lined up around the bus loop to wave goodbye to students who were passengers in vehicles. While Ms. Marinaro's student remained in the backseat, Ms. Marinaro exited her vehicle and passed out flyers to school staff. In these flyers, she alleged Dr. Lewis-Wilkerson committed an "abominable, vile, heinous act against [her student]" when she "called judicial authorities and lied about me and my child with the purpose to deprive my child of his mother." Ms. Marinaro posted similar attacks against Dr. Lewis-Wilkerson's professional reputation in social media posts and in correspondence sent to the School Board. Ms. Marinaro's actions—particularly those on June

CW000032

11, 2020—raised significant safety concerns for Dr. Lewis-Wilkerson because school staff, students, and parents saw Ms. Marinaro's escalating behavior and disruptive conduct. Dr. Lewis-Wilkerson memorialized her concerns in her June 24, 2020 limitation of access letter to Ms. Marinaro.

Unfortunately, Ms. Marinaro has not abided by Dr. Lewis-Wilkerson's June 24, 2020 letter and continues to circulate her unverified claims against Dr. Lewis-Wilkerson's professional character. After the Dismissal (early fall 2019), Dr. Lewis-Wilkerson contacted her supervisor, Sterling White, Ed.D., Director of Elementary Schools, requesting permission to contact Ms. Lewis, the student's guardian *ad litem*, about the safety concerns observed during the Dismissal. Dr. Lewis-Wilkerson told Dr. White that the father presented her with a copy of a signed release to speak with Ms. Lewis. After Dr. White gave his permission, Dr. Lewis-Wilkerson called Ms. Lewis and relayed her safety concerns about the Dismissal. No further communications occurred. In addition, Dr. Lewis-Wilkerson and four members of her school staff were deposed by Ms. Marinaro in the fall of 2019. Ms. Marinaro did not order transcripts of these depositions. Ms. Marinaro issued witness subpoenas to the four Thalia Elementary staff members who saw the early fall 2019 Dismissal to the divorce and custody trial in Virginia Beach Circuit Court. She did not issue a trial witness subpoena to Dr. Lewis-Wilkerson. At the trial, she called none of the four Thalia Elementary staff members to testify on her behalf. Thus, Ms. Marinaro's allegations of Dr. Lewis-Wilkerson's nefarious interference in her divorce and custody case have no factual basis. Ms. Marinaro's repeated circulation of these allegations are a disruption to Dr. Lewis-Wilkerson's administration and staff. Ms. Marinaro's actions still pose significant safety concerns for Thalia Elementary students and staff.

# EXHIBIT# 14

**VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH**

DOMENICK MARINARO,

        Petitioner,

v.

                            CL 18 - 5322
                            *In Re:* A      M    (DOB      )

OKSANA MARINARO,

        Respondent.

---

### Notice and Motion for Sanctions

---



    PLEASE TAKE NOTICE that on December 20, 2021, at 9:30 a.m. or as soon thereafter as Counsel may be heard, the child of the parties, A    M      by Counsel, shall move this Honorable Court pursuant to Virginia Code §8.01-271.1 to order sanctions against the Defendant. In connection with his Motion, the child hereby respectfully states as follows:

1. The pertinent sections of Virginia Code §8.01-271.1 mandate that all parties who file pleadings do so for an appropriate purpose and in good faith. Specifically, the Code states:

       A. The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

       B. If a pleading, motion, or other paper is signed or made in violation of this section, the Court, upon motion or upon its' own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including reasonable attorney fees.

2. From March 2020 to August 2020 and August 2021 to November 2021, Defendant, Ms. Marinaro, has filed multiple pleadings, letters, and other random documents disparaging the undersigned with wholly fabricated statements, disparaging her own former attorneys with wholly fabricated allegations, disparaging almost every member of this Bench with

wild, wholly fabricated allegations, and seeking remedies that are not authorized in any way under the law.

3. Defendant has filed identical pleadings multiple times despite the rulings of the Court disposing of them. The motions and pleadings are too numerous to list but are all contained in the record of this Honorable Court.

4. Defendant's pleadings have clearly been designed to harass and menace the parties, the Bench, and Counsel, as there can be no other ascertainable purpose for the multiple filing of identical pleadings which contain personal insults, disparaging remarks, and seek no viable legal remedy.

WHREFORE, the child, A       M.       , by his Guardian *Ad Litem*, hereby respectfully prays that this Honorable Court grant his Motion to impose appropriate sanctions on the Defendant and that this Honorable Court award such other and further relief as the Court deems necessary and proper in the administration of justice herein.

A          M.

By: _____
Guardian *Ad Litem*

Bretta Z. Lewis, Esq. (VSB #45574)
**WOLCOTT RIVERS GATES**
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
P#: (757) 497-6633
F#: (757) 497-7267
Email: blewis@wolriv.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2021, a true and accurate copy of the foregoing was sent *via* email and US Mail to the Plaintiff, Mr. Domenick A. Marinaro (damj@marinaro.com), 636 Lynn Shores Drive, Virginia Beach, VA 23452, and to the Defendant, Ms. Oksana Marinaro (omarinaro@nps.k12.va.us), 3901 Roebling Lane, Virginia Beach, VA 23452.

_____
Bretta Z. Lewis, GAL for A      M

# EXHIBIT# 15



**VIRGINIA BEACH CITY PUBLIC SCHOOLS**
CHARTING THE COURSE

June 16, 2022

*Via Email Only (omarinaro@hotmail.com)*

Ms. Oksana Marinaro
3901 Roebling Ln
Virginia Beach, VA 23452-1862

Re: Enforcement of limitation of access terms in effect
    Fifth grade graduation–Thalia Elementary School

Dear Ms. Marinaro:

This letter confirms receipt of your June 15, 2022, email in which you state your intention to attend Thalia Elementary School (Thalia Elementary)'s fifth grade graduation ceremony on June 17, 2022. You also requested confirmation Crystal Lewis-Wilkerson, Ed.D., Principal, Thalia Elementary, would "behave appropriately" and not "create any obstacles" for you to attend the ceremony.

The Department of School Leadership (DOSL) reviewed your letters, complaints, social media posts, correspondence, and pleadings sent to Thalia Elementary School administrators and staff, the School Board of the City of Virginia Beach, VA (School Board), Virginia Beach City Public Schools (VBCPS) administrators, the Virginia Department of Education, the Virginia Beach Circuit Court Clerk's Office, and the Virginia Beach Circuit Court Judges' Office. School Administration also reviewed the limitations of access and ban letters issued to you for your repeated disruption of the educational environment and attempted malignment of Dr. Lewis-Wilkerson's professional judgment and reputation.

Most recently, on May 23, 2022, you filed an objection to entry of a final divorce decree with Virginia Beach Circuit Court. In this pleading, you allege Dr. Lewis-Wilkerson presented "non-credible" witness testimony. In support of this claim, you allege she is openly biased, discriminatory, and "xenophobic." You further accuse her and others of engaging in acts of "psychological violence" and depriving you access to your student for six months, i.e., "the equivalent to what Russians do in Ukraine: rape, torture, and kill women in front of their little children."

Since 2019, you have disregarded the limitations imposed upon you. You have contacted School Board members and VBCPS administrators despite clear directives not to have any contact with them. You questioned Dr. Lewis-Wilkerson about her ties to fascist and neo-Nazi organization in court. You continue to intimidate and harass Thalia Elementary staff. Your behavior has become more threatening, unpredictable, and erratic. Your blatant disregard for the laws, regulations, and procedures governing your actions poses significant safety concerns.

Thalia Elementary students and their families deserve to celebrate their accomplishments without fear or disruption. Your most recent behavior does not show improvement but regression. Dr. Lewis-Wilkerson and Thalia Elementary staff have no evidence you will follow safe school protocol. For these reasons, the Department of School Leadership decided not to lift your ban from school property to attend this event. By copy of this letter, Safe Schools may take steps, including contacting the Virginia Beach Police Department, to enforce the limitation of access terms already in effect.

Sincerely,

*Dannielle Hall-McIvor*

Dannielle Hall-McIvor
Associate City Attorney

Cc (via email):    Eugene Soltner, Ed.D., Chief of Schools
Danielle Colucci, Senior Executive Director of Elementary Schools
Sterling A. White, Ed.D., Executive Director of Elementary Schools
Crystal Lewis-Wilkerson, Ed.D., Principal, Thalia Elementary
Thomas A. DeMartini, Director, Safe Schools
Dannielle Hall-McIvor, Associate City Attorney

2